TRAVELERS INSURANCE COMPANY OF HARTFORD, CONNECTICUT, v. ANDREW J. SNOWDEN.

FILED JUNE 7, 1900.  No. 9,205.

1. **Accident Insurance:** CLASSIFICATION: GENERAL AGENT. A classification of the occupation of an applicant for accident insurance by the general agent of the company on full information of the facts binds the insurer.

2. **Verdict:** CONFLICTING EVIDENCE. A verdict returned upon conflicting evidence will not be disturbed on review unless manifestly wrong.

ERROR to the district court for Buffalo county. Tried below before GREENE, J. *Affirmed.*

*Charles Offutt* and *W. W. Morsman*, for plaintiff in error.

*W. W. Morsman:* I am aware of the case of *Pacific Mutual Life Ins. Co. v. Snowden*, 12 U. S. App., 704, a suit for the same injury. In that case the insurer seems to have contended that the statements of the assured in the application were warranties, and defeated a recovery *in toto*. There is nothing in the report of the case to show that there was any provision for payment of so much indemnity as the premium, at the proper rates, would have purchased, in case of injury in an occupation more hazardous than that in which the assured was insured; nor does it appear that it was contended by counsel, or considered by the court, that a cotemporaneous oral agreement was attempted to be substituted for the written agreement of the parties. But whatever may have been in the record and before the court, the opinion (rather intemperate in tone), I submit, is not sound. If a plaintiff suing at law upon a promissory note plainly calling for eight per cent interest pleaded and offered oral evidence that the parties agreed upon ten per cent, the reception and submission of the evidence to a jury by the court would not be a more palpable error than this record presents.

*H. M. Sinclair, contra:*

Where a certain trade or business or occupation is insured, the insurer is to be taken as consenting and agreeing that all its customary incidents shall be allowed. *Turley v. North American Fire Ins. Co.*, 25 Wend. [N. Y.], 374; *Cotton v. Fidelity Co.*, 41 Fed. Rep., 506; *Moulor v. American Life Ins. Co.*, 111 U. S., 335; *Northwestern Mutual Life Ins. Co. v. Hazelett*, 105 Ind., 212; Bliss, Life Insurance, sec. 386; *Carson v. Jersey Ins. Co.*, 43 N. J. Law, 300.

Had the defendant in error a right to plead and prove the actual facts as to how and why the classification in the policy was made, and what was the meaning given it by the parties themselves when made? That this can be done there would seem to be no doubt, both upon principle and authority. *Motsinger v. State*, 123 Ind., 498; *Mason v. Ryus*, 26 Kan., 464; *Cosper v. Nesbit*, 45 Kan., 457; *Coates v. Sulau*, 46 Kan., 341; *Gallagher v. Black*, 44 Me., 99; *Stoops v. Smith*, 100 Mass., 66; *Swett v. Shumway*, 102 Mass., 368; *Keller v. Webb*, 125 Mass., 88; *Macdonald v. Dana*, 154 Mass., 152; *Adamant v. Bank*, 5 Wash., 232; *Wolfert v. Pittsburg, C. & St. L. R. Co.*, 44 Mo. App., 330; *Ellis v. Harrison*, 104 Mo., 270; *Kendrick v. Beard*, 81 Mich., 182; *Aultman v. Clifford*, 55 Minn., 159; *Sanford v. Newark*, 37 N. J. Law, 1; *Hart v. Hammett*, 18 Vt., 127; *Steadman v. Taylor*, 77 N. Car., 134; *Jenny Lind Co. v. Bower*, 11 Cal., 194; *Beason v. Kurz*, 66 Wis., 448; *Rhodes v. Cleveland Rolling Mill Co.*, 17 Fed. Rep., 426; *Chalfant v. Williams*, 35 Pa. St., 212; *McDonald v. Unaka Timber Co.*, 88 Tenn., 38.

NORVAL, C. J.

This case was before us at a former term. *Travelers Ins. Co. v. Snowden*, 45 Nebr., 249. The action was upon an accident policy of insurance providing for the payment of $5,000 in case of death of insured through external violence and accidental means, or one-third of that amount in the event he should suffer the loss of a hand. The policy also stipulated that Andrew J. Snowden, the plaintiff below, is insured "under classifications preferred, being a cattle dealer or buyer and shipper (not tender or drover, not on ranch or farm by occupation),   *   *   * that if the insurer is injured in any occupation or exposure classed by this company as more hazardous than that here given, his insurance shall be only for such sums as the premium paid by him will purchase at the rates fixed for such increased hazard." The policy was issued subject to the numerous conditions on the back thereof,

Travelers Ins. Co. v. Snowden.

among them being the following: "This insurance does not cover * * * voluntary exposure to unnecessary danger; entering or trying to enter or leave a moving conveyance using steam as a motive power; riding in or on any such conveyance not provided for the transportation of passengers." Subsequent to the reversal of the first judgment plaintiff, by permission of the trial court, filed an amended petition, which, *inter alia*, averred, in effect, that plaintiff, at and prior to the issuance of the policy, was engaged in buying and shipping cattle to market over railroads, accompanying them in their transportation; that plaintiff went to the defendant's local agent at Kearney, Sylvester S. St. John, and informed him fully of his business and the manner in which he conducted the same, to wit, "that he was engaged in buying and shipping cattle to market over the railroads and usually accompanied and attended them on the way, and applied to said agent for a policy of insurance in the defendant company that would cover accidents while he was so engaged in the shipping and attending his cattle to market as aforesaid; that the said agent was uncertain about the classification of a risk for this purpose, and so informed plaintiff, but submitted the said application, with the facts of occupation and business, together with the further fact that the insurance wanted should cover accidents while engaged in shipping and attending the cattle to market as aforesaid, to the general agent of defendant company at Omaha, Nebraska, who, on consideration thereof, classified plaintiff's occupation as that of a cattle dealer, or broker and shipper, and made out the policy hereinafter set forth, and represented to the plaintiff that it was in accordance with his application, and covered accidents sustained while engaged in shipping and attending his cattle to market as he had desired; that the plaintiff, relying on said representations, paid the defendant the premium thereon, and received and accepted the policy." The defendant moved to strike from the amended petition

the foregoing averments, or the principal portion thereof, as being surplusage, redundant, immaterial and irrelevant, which motion was denied, and on the same day the defendant filed an answer, which admitted the execution and delivery of the policy of insurance in question, denied plaintiff was injured during the life thereof, put in issue other averments, and alleged, substantially, that such injury was occasioned by plaintiff's own voluntary exposure to unnecessary danger and was received while, and in consequence of, his entering, or trying to enter, or while riding on top of, a moving conveyance using steam as a motive power. The second trial of the cause resulted in a verdict and judgment for plaintiff in the sum of $2,424.50, and the defendant has prosecuted error.

It is disclosed by the evidence that when the policy was issued, as well as at the time of the injury, plaintiff was engaged in the occupation of buying and shipping cattle; that in September, 1889, and before the expiration of the insurance, plaintiff shipped from Cushing to Omaha several car loads of cattle over the Deadwood branch of the Burlington & Missouri River railroad. He accompanied the cattle for the purpose of caring for them while in transit. The train was a long one, the cars in which were plaintiff's cattle being next to the engine. The train reached Seward about midnight, where it stopped and plaintff got out of the caboose and walked near the track with prod-pole in hand to look after his stock. Finding one of the steers down he attempted to get him up, and while thus engaged the engineer gave the signal for starting, whereupon plaintiff attempted to climb to the top of one of the freight cars, as he had not sufficient time in which to go to the caboose. Before he had reached the top of the car the train started forward suddenly, and with such force as threw plaintiff between the cars, causing the loss of one of his hands. There was also introduced, over objections of defendant, evidence tending to establish the allegations of the amended petition already set out. The fifth and sixth

instructions given by the court on its own motion, which were excepted to by defendant, follow:

"No. 5. The court instruct the jury that if you believe from all the evidence in the case, that Snowden went to the agent of defendant and informed him of his business, and that he was a shipper of cattle, and as such shipper accompanied his cattle in transit, and that he wanted insurance to cover said business, and that the local agent communicated all of said facts to the general agent of defendant, and that, with full knowledge of all the facts, said defendants issued the policy in suit and informed plaintiff that said policy covered his said business and the risks incident thereto, and that thereupon said Snowden paid the premium demanded by the defendant, then the court instructs the jury that having insured plaintiff as a shipper of live stock defendant insured him against accidents which would or might result in the doing of anything incident to said business; and if you find from the evidence in this case that said Snowden did inform said defendant of his business, and that he did accompany his stock to market, and you further believe that at the time of the injury Snowden was doing that which was incident to, or a part of the business of shipping stock to market, and that said Snowden was doing such things only as an ordinarily prudent man would have done under the circumstances, and while so acting was without fault on his part injured, then the defendant company is liable, and you will find for the plaintiff. If, however, you believe from the evidence that at the time of the injury said Snowden was voluntarily exposing himself to unnecessary danger, then you will find for the defendant.

"No. 6. If you find for the plaintiff you will allow him one-third of five thousand dollars, together with seven per cent interest thereon from December 15, 1889."

The trial court declined to give a peremptory instruction tendered by the defendant to return a verdict in its favor, as were also refused the following requests to charge submitted by it:

"4. If the jury believes from all the facts and circumstances in evidence that the plaintiff received the injury which resulted in the loss of plaintiff's hand, while he, the said plaintiff, was entering or getting upon, or trying to enter, get into or upon a moving conveyance, to-wit, a railroad car using steam as a motive power, or that the said injury resulted directly therefrom, the jury must find for the defendant.

"5. If the jury believe from all the facts and circumstances in evidence, that the plaintiff received the injury which resulted in the loss of plaintiff's hand, while he, the said plaintiff, was riding in or upon a moving conveyance, to-wit; a railroad car using steam as a motive power, and which said car was not provided for the transportation of passengers or that said injury resulted directly therefrom, the jury must find for the defendant.

"7. If the jury believe from all the facts and circumstances in evidence, that the plaintiff received the injury which resulted in the loss of his hand while he, the said plaintiff, was tending cattle in shipment, then, and in such event, the plaintiff cannot recover."

While the petition in error contains many assignments predicated on the giving and refusing of instructions, the overruling the motion of defendant to strike from the amended petition the several averments therein, which we have quoted, and the admission of testimony in support of said allegations, said assignments, for convenience, will be considered together, since they practically raise the same question, namely, whether it was competent for the plaintiff to plead and prove the facts relative to the issuance of the policy and the classification therein of the risk.

The defendant insists that evidence to establish the averments of the petition was inadmissible, because it tended to vary or contradict the terms of the policy. We do not understand that the evidence varied the written contract, but was adduced to show that the classification of the risk in the policy was so understood and meant

by the party to cover plaintiff's occupation or business. He truly stated the same to the defendant who classified the risk and informed him that the policy covered his case. Upon this assurance the premium was paid, and the defendant can not be heard to say that plaintiff's risk was improperly classified or that the policy did not cover his injury. The precise question was passed upon in *Pacific Mutual Life Ins. Co. v. Snowden,* 12 U. S. App., 704. That was an action upon a similar policy to recover for the same injuries by the present plaintiff. In that case, as in this, Snowden stated to the agent of the insurer his business, and the policy classified the occupation as "cattle dealer or broker, not tender or drover, not on farm or ranch." Judge Caldwell, in delivering the opinion of the court, observed, page 709: "The contention of the company is, that, under the description of the plaintiff's occupation in the application, he was not insured while going with his cattle and caring for them when taking them to market; and that the assurance given to the plaintiff by the defendant's agents at the time when the policy was issued to the contrary does not bind the company. The book said to contain the defendant's definition and classification of different occupations with the rate of premium established for each is published by the defendant for its own use and furnished to its agents for their information and guidance. Neither the book nor any portion of its contents is carried into the application or policy, or even referred to. How applicants for insurance are to possess themselves of knowledge of the contents of this book, or, indeed, that there is any such book, does not appear. The agent testifies that this book, so far as he knows, was never shown to the plaintiff. When the plaintiff applied for insurance he could do no more than state fully and truthfully what his occupation was, and what he did in pursuit of it, and leave it to the agent to classify the risk and fix the rate of premium. This is precisely what was done. There is no claim that the plaintiff did not

give full and exact information as to what his occupation was, which the agent says was already known to him. Upon these facts the description of the plaintiff's occupation made by the agent, and the classification of the risk thereunder, and the assurance given the plaintiff that his policy covered injuries received while accompanying his cattle to market, bind the defendant as effectually as if these representations and assurances had been written into the policy. But it is said the plaintiff states in his application for the policy that 'I understand this company's classification of risks.' How did he understand it? Certainly not by intuition. He had no book. His understanding of it, then, must have been acquired from the representations made to him by the defendant's agents. Under such circumstances, the classification of the risk, so far as related to the policy in suit, must be such as these agents represented it to be when the plaintiff purchased the policy, and not what it may appear to be according to a classification made by the defendant which was not shown to the insured and of which he was ignorant. In many cases the insured is required to state facts respecting the risk within his own knowledge, and in such cases he must state them truly; but where he states them truly and the insurance agent writes them down differently, the insured is not prejudiced thereby, and the rule is the same where he answers a question or makes a statement about a matter peculiarly within the knowledge of the insurance company, and his answer or statement is dictated by, or based upon information derived from, the company's agent. The time has long since passed in this country when an insurance company can perpetrate a fraud upon the insured by accepting the premium, and when the loss occurs, avoid its payment upon the ground that its agent departed from his private instructions, or misinterpreted them, or exceeded his authority in a matter in which the company had held him out to the public as having authority. Within the apparent scope of his authority,

acts and assurances of the agent are the acts and assurances of the company itself. In 2 American Leading Cases [5th ed.], 917, the learned author states the rules as follows: 'Through the interested or officious zeal of the agents employed by the insurance companies,' they, 'in the wish to outbid each other and procure customers, not unfrequently mislead the insured by a false or erroneous statement of what the application should contain, or, taking the preparation of it into their own hands, procure his signature by an assurance that it is properly drawn, and will meet the requirements of the policy. The better opinion seems to be that, when this course is pursued, the description of the risk should, though nominally proceeding from the insured, be regarded as the act of the insurers.' This statement of the law is quoted approvingly and emphasized by Mr. Justice Miller in delivering the unanimous opinion of the supreme court in the case of *Insurance Company v. Wilkinson*, 13 Wall. [U. S.], 222, 235, 236. This is now the accepted doctrine. *Eames v. Home Ins. Co.*, 94 U. S., 621; *New Jersey Mutual Life Ins. Co. v. Baker*, 94 U. S., 610; *Insurance Company v. Mahone*, 21 Wall. [U. S.], 152. The cases in the state courts which support the rule here laid down are too numerous to require or justify citation. According to the testimony of the defendant's own agent, the plaintiff's policy describes, and was intended to describe, his occupation as precisely that in which he was engaged when he received his injury, and he classed and intended to class the risk of such occupation as 'preferred.' The insured paid for the policy on the faith of the correctness of the agent's description of his occupation and classification of the risk, and the law will not permit the company after an injury has occurred to change the definition of the plaintiff's occupation and the classification of the risk to his prejudice. The company is bound by the terms of the contract as it was understood and entered into by its agent with the insured." With that decision we are satisfied, and its applicability to the case at bar

is obvious. It follows that there was no reversible error in permitting the plaintiff to prove the allegations of his petition or in the giving or the refusing of instructions.

It is also argued that the findings of the jury are not supported by sufficient evidence. There was proof adduced tending to establish that the injury was received while the plaintiff was endeavoring to get upon a moving train, as well as evidence to the effect that the train had not started when he undertook to climb upon the car. The jury having returned a verdict for the plaintiff upon conflicting evidence, by a familiar rule its finding can not be disturbed upon review. The judgment is

AFFIRMED.