ARNEBERG, Respondent, vs. CONTINENTAL CASUALTY COM-
PANY, Appellant.

*September 14—October 10, 1922.*

*Insurance: Accidental death: Classification of insured: Special
classification by insurer's agent: Knowledge of agent: Im-
proper classification: Effect: Misrepresentation: Life insur-
ance policy covering accidental death: Whether additional
insurance covers same risk.*

1. The superintendent of a logging company which operated no
   camps but contracted its work, who traveled from camp to
   camp letting the contracts and inspecting log deliveries by
   contractors, was not a "superintendent in woods," which was
   the classification in a manual issued by the defendant insurer
   for the use of its agents in classifying the occupations of ap-
   plicants, but was a "lumberman, office and traveling duties"—
   a special classification made by the insurer which more
   nearly described his occupation than any specified in the
   manual.
2. The evidence in this case is *held* to support a finding that there
   was no misrepresentation to the insurer's agent by the insured
   as to his duties, where the insurer's agent had been intimate
   with the insured, frequently traveling with him to the lumber
   camps, and had seen him standing close to and making a
   mental estimate of logs delivered by contractors.
3. An insurer should be estopped to challenge an indemnity clas-
   sification made by its agent where the agent had full knowl-
   edge of the duties of the insured.
4. Where the insurer's agent fills out an application knowing or
   having been informed by the applicant of the facts demanded
   by the questions therein, mistakes in the application con-
   cerning such facts, including improper classification of the
   occupation of the insured, do not avoid the policy.
5. An insurance agent who fills out an application upon correct
   information supplied by the applicant is the agent of the in-
   surer and not of the insured.
6. Where an applicant for accident insurance fully and fairly
   states his occupation to the agent of the insurer, who writes
   the application and classifies the occupation, and a binding
   policy is issued thereon to pay certain indemnity based upon
   such classification, the insurer cannot reduce the amount of
   the indemnity by showing misclassification.
7. Where a policy for accidental death provided for a reduction
   of indemnity if insured should carry with another company
   other insurance covering the "same loss" without giving the

indemnity company notice, another policy for indemnity for "death from whatever cause," although including accidental death, does not cover the "same loss," since death benefit is not a dominating feature of the accident policy—the two policies overlapping only in case of accidental death and not being similar in any other provision.

APPEAL from a judgment of the circuit court for Lincoln county: A. H. REID, Circuit Judge. *Affirmed.*

This action was brought to recover death benefits upon an accident insurance policy issued by the defendant company to plaintiff's deceased husband. At the time of making the application upon which the policy was issued the insured was in the employ of the Heineman Lumber Company. His title was logging superintendent. It appears that the Heineman Lumber Company owned a number of tracts of timber, the logging of which was performed by contractors. It was the duty of the insured to let the contracts for logging various tracts of timber and to see that the contracts so let were properly performed. His other duties required that he travel from camp to camp upon logging railroads and take note of the progress being made by the various contractors. If it was necessary, he pointed out the timber to the contractors. The company relied upon him to see that the logs were put in and got to the mill. He had general supervision of that whole work. He was almost always at the mill office one day each week during the logging season. He had an office at his house. He transacted a great deal of business from the house over the telephone. Ordinarily he was at the mill office on Saturday. He would spend about a half of the days he was in town at the mill office. His occupation was fully and fairly stated to Joe A. Chilsen, defendant's agent at Merrill. Said agent filled out the application blank for insurance, which was signed by the insured, and in response to the question "What is your occupation (describe fully)," said Chilsen, defendant's agent, inserted "Lumberman (office and traveling duties);" and in response to the question

"What are the duties required of you," Chilsen inserted "Letting logging contracts and checking up on jobs." In the manual of classifications which the company furnished the agent there was no such classification.

Chilsen sent the application to the Neckerman Agency at Madison, Wisconsin, who was the state agent of the defendant company. He inclosed with the application a letter addressed to the Neckerman Agency, in which he said:

"I am inclosing herewith application of Mr. Sig. Arneberg for a Non-cancelable and wish to say in connection that I have classed Mr. Arneberg as preferred 'Lumberman in woods, manager, office (and traveling duties only), not superintending work in mills, yards, woods, or on river drive.'

"Mr. Arneberg, in a way, is a logging superintendent, but not in the terms of the classification book classed as Medium. He has charge of the logging operations of the Heineman Lumber Company of this city, who let all of their logging by contract. Mr. Arneberg makes the contracts and travels about visiting the loggers seeing what progress they are making, but as to actual supervising of logging operations— it is not his line of work.

"He believes that he is entitled to the preferred classification and will not consider the policy under any other classification. I am holding the medical examination until I hear from you."

The policy was duly issued containing the statement that "the insured is by occupation a lumberman, office and traveling duties, classified by the company as select."

On February 12, 1921, during the period covered by the policy, the insured accidentally met his death in the town of Birch, Lincoln county, Wisconsin, on the line of the Chicago, Milwaukee & St. Paul Railway Company, when three runaway cars loaded with pulp wood crashed into the caboose in which he was riding.

The plaintiff brought action to recover on the policy. The company resists liability on the ground that the occupation of the insured was not correctly stated in the ap-

plication, and that at the time of his death he was engaged in an occupation more hazardous than that covered by the policy. An offer of judgment for $2,000, claimed to be the amount of insurance to which the premium paid by the insured would entitle him in the occupation which he was pursuing previous to his death, was made and refused.

The case was tried before a jury, but, both parties having moved for judgment at the close of the evidence, the court made findings of fact in which he found that the application for the insurance was filled out by J. A. Chilsen, the agent of the company; that there was no fraud or misrepresentation on the part of the insured in connection with the statement of his occupation at the time, or prior to the making, of said application for insurance; that he fully and fairly stated the nature of his duties as an employee of the Heineman Lumber Company, and that at the time of the making of the application, and for more than five years prior thereto, the said agent had been an intimate acquaintance of the insured; that during said time he had repeatedly and very frequently traveled with the insured on freight trains and passenger trains on the Gleason branch of the Chicago, Milwaukee & St. Paul Railway Company, along which branch the Heineman Lumber Company owned landings at which their several jobbers under contracts delivered logs; that said agent on said trips had repeatedly seen the insured standing at the landings apparently making a mental estimate of the logs delivered to and located thereon; that said agent on said trips had seen the insured clothed as a woodsman; that said agent knew of his own knowledge that said Heineman Lumber Company operated no logging camps of its own, but that its logging operations consisted entirely of letting its contracts to jobbers, and that it was the duty of the said insured to let the said contracts for each specific description to be cut, and that it was the duty of said insured to check up on said contracts, and on behalf of the Heineman Lumber Company to see that said

contracts were performed according to their terms; that said agent knew at the time of taking said application that the duties described therein required said insured to travel from camp to camp and from landing to landing to check up the work of the various jobbers performing contracts with the Heineman Lumber Company; that said agent prepared a statement to accompany said application, and that in said statement said agent classified the said insured as "Lumberman in woods, manager, office (and traveling duties only), not superintending work in mills, yards, woods, or on river drive;" that there was no change in the occupation of the said insured from the time of making said application to the date of his death; that the manual of classification of risks of the defendant has no designation "Lumberman, office and traveling duties;" that the classification "Lumberman, office and traveling duties," more accurately describes the deceased's occupation than any classification appearing in said manual. Judgment was rendered in favor of the plaintiff for $5,000. From the judgment so rendered defendant brings this appeal.

For the appellant there was a brief by *J. & M. Van Hecke*, attorneys, and *George C. Bliss*, of counsel, all of Merrill, and oral argument by *Mr. Bliss.*

For the respondent there was a brief by *Smith & Wurster* of Merrill, attorneys, and *Edward M. Smart* of Milwaukee, of counsel, and oral argument by *Mr. Smart* and *Mr. Ralph E. Smith.*

OWEN, J. There is no evidence to justify a contention that the occupation of the insured was different on the day of the accident than it was at the time of making the application. In fact, we do not understand that the defendant seriously contends that there was any change in the occupation of the insured during the time that the policy was in force. It is rather the contention of the defendant that the occupation was not properly classified; that it should have been

classified in accordance with its manual, that is, "Superin-
tendent in woods, not foreman, D 4 medium." It seems
apparent to us that this classification does not properly
describe the occupation in which the insured was engaged.
He was not a superintendent in the woods. The duties of
his employment with the Heineman Lumber Company re-
quired him to make logging contracts and to see that work
went forward under the contracts. He had no power to
direct the method of performing the work. He had no
power to hire or discharge men or to direct their activities.
It was his duty, as we understand it, to keep in touch with
the progress made and see that the contracts were per-
formed. This did not constitute him a "superintendent in
woods" within the meaning of that classification. There is
no other classification in the manual that can be construed
as covering the occupation in which the insured was en-
gaged. The classification of the insured, "Lumberman,
office and traveling duties," was therefore a special classifi-
cation made by the company, which the trial court found,
and with which we agree, more nearly described the occupa-
tion in which the insured was engaged than any classifica-
tion specified in the manual. There is no justification in
the evidence for a finding that the insured in any manner
or degree misrepresented his occupation to the agent. The
agent was an intimate acquaintance and associate of the
insured and had a thorough knowledge and understanding
of the business in which he was engaged. These facts
bring the case squarely within the authority of *Warren v.
Globe I. Co.* 170 Wis. 600, 176 N. W. 73, where, under
similar circumstances, the company was held bound by the
classification.

We think, too, that the principle of estoppel is applicable
to a situation such as this, and the company should not be
heard to challenge a classification made by its agent with
full knowledge of the business or occupation in which the
insured is engaged. It is quite generally if not universally

held that where the insurer's agent fills out the application for an insurance policy, knowing or having been properly informed by the applicant of facts demanded by questions therein, mistakes in the application as to such facts do not avoid the policy. *May v. Buckeye Mut. Ins. Co.* 25 Wis. 291; *Dunbar v. Phenix Ins. Co.* 72 Wis. 492, 40 N. W. 386; *Mechler v. Phœnix Ins. Co.* 38 Wis. 665; *Johnston v. Northwestern L. S. Ins. Co.* 94 Wis. 117, 68 N. W. 868; *Union Mut. Ins. Co. v. Wilkinson,* 80 U. S. 222; 2 Joyce, Insurance (2d ed.) § 472 *et seq.* See, also, cases collated in note to be found in 16 L. R. A. N. s. 1233, where the rule is stated in this language: "If the company's agent, in preparing the application, either by neglect, mistake, or fraud, without the knowledge of the insured, inserts false answers therein, when correct replies were given by insured to the questions asked, the prevailing rule is that the fault of the agent must be borne by the company which sends him forth." The rule is based on the principle that under such circumstances the agent is the agent of the company and not that of the insured, and that where the insured fully and fairly states the facts, the agent who translates such facts into the succinct phrasing of insurance parlance acts as the agent of the company. The reason for the rule is well stated in 2 American Leading Cases (5th ed.) 917, in the following language, which is frequently found quoted with approval:

"By the interested or officious zeal of the agents employed by the insurance companies, in the wish to outbid each other and procure customers, they not unfrequently mislead the insured by a false or erroneous statement of what the application should contain, or, taking the preparation of it into their own hands, procure his signature by an assurance that it is properly drawn and will meet the requirements of the policy. . . . The better opinion seems to be that when this course is pursued the description of the risk should, though nominally proceeding from the insured, be regarded as the act of the insurers."

It is quite generally held that by reason of this principle accident insurance policies are not void because the agent who filled out the application did not properly classify the applicant's occupation. 1 Corp. Jur. 436, and cases cited. Accident insurance companies, however, urge that the rule should not be applied where, under the terms of an accident insurance policy, the insured is entitled to the amount of indemnity which the premium paid by him will purchase in the occupation in which he is actually engaged, where his occupation is mistakenly classified in the application or in the policy. In other words, it is urged that the policy should be held void *pro tanto* though not *in toto*. Two courts have apparently adopted this rule. *Employers' L. Assur. Corp. v. Back,* 102 Fed. 229; *Bothell v. Nat. Cas. Co.* 59 Wash. 209, 109 Pac. 590. In the latter case it is said in effect that the rule secures to the insured all to which he is entitled and protects the insurance company from the dishonesty of its agents. However wholesome or desirable such a rule may be, we do not appreciate the logic upon which it is based. We can discover no ground for the distinction which is necessary to render an insurance policy void *pro tanto* but not void *in toto* where the agent of the insurance company errs in the classification of the insured's occupation. If the act of the agent under such circumstances is the act of the insurance company, then his error is the error of the company, and the company should be responsible for the consequences thereof. Upon what principle can the insured be penalized for the consequences of a misclassification where he is in no sense responsible therefor? It is well known that accident insurance companies designate all human activities under a relatively few classifications. They furnish their agents a manual of instruction which enables them to classify a given occupation according to the intent and purpose of the company. When an applicant states to the agent the facts concerning his employment or occupation he has done all that should

be required of him. He does not possess the knowledge requisite to enable him to designate his occupation in conformity to classifications which have been prescribed by the company. That is a function which must be performed by the company upon information furnished by the applicant, and when such information is truthfully given the company should be held bound by its own classification. When the insurance company delivers its policy to the insured the latter should have some assurance that he has purchased the protection which is held out by the terms of the policy. It may be his desire to purchase a certain amount of insurance. He may feel that a given amount of indemnity is essential to him in the emergencies covered by his policy. If the policy delivered does not furnish that indemnity he should not be lulled into the belief that it does. He should be given an opportunity to purchase the amount which he feels is necessary for him to have. Again, one may be willing to pay so much and no more for a given indemnity. This was true with the insured in this case, as indicated by Chilsen's letter to the Neckerman Agency. When the insured pays his premium and receives a policy promising him a certain amount of indemnity, no just principle will permit the company to modify or discount the amount of such indemnity promised because of an error made by its agent in classifying the occupation of the insured.

But it is unnecessary to dwell upon the morality of the principle. The great weight of authority holds that the agent who fills out an insurance application in obedience to correct information supplied by the applicant acts as the agent of the company and not as the agent of the insured. Mistakes made by him do not void the policy, because he is the agent of the company and his mistakes are the mistakes of the company. To hold that the policy may be void *pro tanto* though not *in toto* is to make a distinction that cannot be supported either upon reason or authority. This,

it seems to us, is the effect of the decisions in *Travelers Ins. Co. v. Snowden,* 60 Neb. 263, 83 N. W. 66, and *Pacific Mut. L. Ins. Co. v. Snowden,* 58 Fed. 342. It was distinctly so held in *Carpenter v. American Acc. Co.* 46 S. C. 541, 24 S. E. 500, and in *Parker v. North American Acc. Ins. Co.* 79 W. Va. 576, 92 S. E. 88, L. R. A. 1917D, 1174. We hold that where an applicant for accident insurance fully and fairly states his occupation to an agent of the company who fills in the blank and classifies such occupation, and a policy is issued thereon binding the company to pay certain indemnity based upon such classification, the company is bound thereby, and cannot reduce the indemnity by showing that there was a misclassification.

There remains one other point to be treated. The insurance policy contained this provision:

"If the insured shall carry with another company, corporation, association or society other insurance covering the same loss without giving written notice to the company, then in that case the company shall be liable only for such portion of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss, and for the return of such part of the premium paid as shall exceed the *pro rata* for the indemnity thus determined."

Before trial the defendant moved to amend its answer for the purpose of alleging that in August, 1915, the insured procured from the Northwestern Mutual Life Insurance Company a policy of $5,000 which provided that in case of his death by accident or otherwise said Northwestern Mutual Life Insurance Company would pay the beneficiary therein named, the plaintiff in this action, the sum of $5,000, and that such policy was in full force at the time of his death. The court denied the motion. This is assigned as error. The contention of appellant is that the policy issued by the Northwestern Mutual Life Insurance Company was for the same loss covered by the accident insurance policy sued upon, and that defendant is liable only

for such portion of the indemnity promised in its policy as the said indemnity bears to the total amount of like indemnity in all policies covering such loss. While both policies furnished indemnity in case of accidental death, they were not alike in any other provision. The Northwestern Mutual Life Insurance Company policy provided indemnity in case of death from whatever cause. This of course included death by accident. It is well understood that death benefit is not the dominant feature of an accident insurance policy. The dominant feature of that kind of a policy is indemnity for loss of time resulting from accident. These two policies overlap only in the one contingency—accidental death. In no other respect are they alike and in no other respect did they cover the same loss. That the defendant company had in mind insurance similar to that covered by its own policy is indicated by questions propounded by the application, where the insured was required to state whether he had any insurance against accident or sickness in other companies or associations, and whether he had any accident or sickness insurance in this company. We think these questions indicate that the company considered it material whether the applicant was carrying other insurance against accident or sickness, and that it intended to provide that in case the insured carried other insurance against accident or sickness then it would be liable only for its proportion of the indemnity. The applicant was required to state in his application that he at that time had no such insurance, and in the policy it was provided that if at any future time the insured should procure such insurance without giving written notice to the company, the company would be liable only for its *pro rata* proportion of the indemnity promised. It is plain to our minds that these policies did not cover the same loss within the meaning of the provision of defendant's policy, and that the court properly denied the motion to permit the amendment.

*By the Court.*—Judgment affirmed.