This is an action to recover upon an accident insurance policy, which policy is too lengthy to be given in full. Certain provisions of the policy, necessary for a consideration of the case, are as follows:
"This policy provides indemnity for loss of life, limbs, sight or time caused by accidental injury and for loss of time caused by sickness — all to the extent herein provided.
"The Continental Casualty company incorporated by the state of Indiana as a stock company, old line plan. General office, Chicago, hereinafter called the company, hereby insures Mr. John M. Dolan (hereinafter called the insured) in class select of the company, as a telegraph operator, office duties only and promises to pay to him or to his beneficiary Nina T. Dolan his wife, indemnities as here provided for loss resulting from accident or sickness.
"The insurance given by this policy is against loss of life (suicide or self-destruction while either sane or insane not included), limb, limbs, sight or time resulting from a personal bodily injury which is effected solely and independently of all other causes by the happening of an external, violent and purely accidental event, and against loss of time resulting solely from bodily sickness which is contracted and begins not less than fifteen days after the date of this policy, all in the manner and to the extent hereinafter provided. The words `injury' and `sickness' wherever hereinafter used mean respectively injury or sickness such as is here described. *Page 329 
"The annual premium for this policy is $44.40, its date is May 4, 1925, and its indemnities are a principal sum of two thousand dollars, a monthly accident indemnity of eighty dollars, and a monthly sickness indemnity of eighty dollars."
There is also a scale of specific indemnities contained in this policy by which the company agrees to pay for the loss of life the principal sum, and, in addition, all premiums previously paid. Another sum is for injuries, not involving death, such as loss of eyes, loss of hands, and loss of feet, under certain circumstances not necessary to be considered here. The policy is for one year, and provides an additional 5 per cent of the indemnities payable under part one in case of renewal. Another section of the policy is as follows:
"This policy is issued in consideration of the statements contained in the application for it and the payment of premiums as therein provided. A copy of such application is hereto attached or hereon indorsed and is hereby made a part of this contract. No provision of the charter or by-laws of the company not included herein shall avoid the policy or be used in evidence in any legal proceeding hereunder."
It also contains the following provisions which are denominated "standard provisions":
"This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance, except as it may be modified by the company's classification of risks and premium rates in the event that the insured is injured or contracts sickness after having changed his occupation to one classified by the company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the company will pay only such portion of the indemnities provided *Page 330 
in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the company for such more hazardous occupation.
"If the law of the state in which the insured resides at any time this policy is issued requires that prior to its issue a statement of the premium rates and classification of risks pertaining to it shall be filed with the state official having supervision of insurance in such state then the premium rates and classification of risks mentioned in this policy shall mean only such as have been last filed by the company in accordance with such law, but if such filing is not required by such law then they shall mean the company's premium rates and classification of risks last made effective by it in such state prior to the occurence of the loss for which the company is liable.
"No statement made by the applicant for insurance not included herein shall avoid the policy or be used in any legal proceeding hereunder. No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the company and such approval be endorsed hereon."
A copy of the application signed by the insured, among other matters, contains the following:
"Occupation (if more than one, name all of them) telegraph operator, office duties only."
* * *
"Except as herein stated, I have not had nor am I now suffering from cerebro-spinal meningitis, paralysis locomotor ataxia, or any disease of the spine nor rheumatism, lumbago, hernia, nor any chronic or periodic mental or physical ailment or disease; nor have I in contemplation any special journey or hazardous undertaking, nor have I ever claimed or received any accident or health insurance benefits. My habits of life are correct and temperate and I am now a policy holder of this company. No exceptions. *Page 331 
"Except as herein stated, I have not been disabled by sickness nor received medical treatment during the last three years. No exceptions.
"I have made the foregoing statements as representations to induce the issue of the policy for which I have made application, and to that end I agree that if any one or more of them be false all right to recovery under said policy shall be forfeited to the company if such false statement was made with actual intent to deceive or if it materially affects either the acceptance of the risk or the hazard assumed by the company."
The complaint alleges due compliance by the plaintiff with all of the terms of the policy in regard to making proof of loss, payment of premiums, et cetera, all of which was admitted in the answer, and also contains the following allegations:
"That at Kamela, Oregon, and at about the time of the issuance of said policy to the said John M. Dolan, the said John M. Dolan then and there at the request of O.A. Lyman who was then the agent of the defendant company, signed a written application for the issuance to him of said policy of insurance, a copy of which application is attached to and made a part of said policy of insurance.
"That in said written application the said John M. Dolan stated his postoffice address was Kamela, Union county, state of Oregon, and that his occupation was `telegraph operator, office duties only' and that the words `telegraph operator, office duties only' were written into said application by said O.A. Lyman, agent of said defendant company; that the said John M. Dolan was then and there engaged as a telegraph operator for the O.-W.R. N. company at Kamela, Oregon, and the nature of his duties required that he receive and transmit telegraphic messages and that he deliver telegrams and telegraphic messages personally to the train and engine crews in the railroad yards at Kamela, Oregon; that he fully and completely stated *Page 332 
the nature of his duties to the said agent of said insurance company and directed attention to said agent to the fact that he was required to deliver said messages to the train and engine crews of said railroad and requested of said agent that he be given a policy of insurance which would protect and indemnify him and his beneficiary therein named in the event of accidental death and injury resulting to him while engaged in such employment; that the said O.A. Lyman as agent of said defendant company then and there advised and assured the said John M. Dolan that the labor so being performed by the said John M. Dolan was classified by the said insurance company in fixing and determining risks and rates in the issuance of policies of insurance as `office duties only' and that in the event of death or injury to the said John M. Dolan while so engaged in the performance of said duties he, or his beneficiary would receive the full amount of indemnity as provided by the terms and provisions of said policy and with full knowledge on the part of said defendant company and its agent of the nature of the duties so being performed by the said John M. Dolan and which he would be required to perform during the life of said policy, the premium paid for the insurance of said policy was accepted from the said John M. Dolan and the said policy was issued and delivered to him."
The complaint alleges demand of the full amount of the policy, failure of the defendant to pay, and prays for the full amount of the policy and $500 attorney's fees.
The defendant answered, admitting the execution of the policy and payment of premiums. The answer, among other matters, contains the following:
"Admits that at Kamela, Oregon, on or about the time of the issuance of the policy referred to in plaintiff's complaint to the said John M. Dolan, the said John M. Dolan signed a written application for the issuance to him of said policy of insurance and admits further that at said time O.A. Lyman was an agent of *Page 333 
the defendant but denies that the said O.A. Lyman secured the application for said policy and denies that the said application for said policy was signed by the said John M. Dolan at the request of the said O.A. Lyman and denies each and every other allegation contained in paragraph VII of said complaint. And alleges further in reference to said paragraph that the said application was secured by James B. Shea and that neither the said James B. Shea nor O.A. Lyman are executive officers of the defendant or were in any manner authorized to waive or modify any of the terms or conditions of the contract of insurance issued to the said John M. Dolan and that neither the said James B. Shea nor the said O.A. Lyman had any authority in respect to the issuance of insurance other than is stated in the said insurance policy issued to the said John M. Dolan.
"Admits that the said John M. Dolan stated in the said written application that his postoffice address was Kamela, Union county, and state of Oregon, but denies each and every other allegation of paragraph VIII of said complaint and further alleges in respect to said matter that the said John M. Dolan stated in his application for said insurance that his duties were `telegraph operator, not in yard, office duties only', and that if in said policy of insurance the said duties were described as `telegraph operator, office duties only' and in the copy of said application attached to said policy of insurance the said duties were likewise described that the same were described through inadvertence and mistake in that the words `not in yard' were through inadvertence and mistake not copied into the said policy and into the said application attached to said policy."
Admit that Dolan was transferred from Kamela to the town of Rieth, but denies that his duties at Kamela were the same as those at Rieth. Denies that the defendant fails and refuses to pay the amount due under the terms and conditions of the policy. *Page 334 
There is a further and separate answer, the principal parts of which, so far as they relate to this case, are as follows:
"That among other things the said policy provides as follows:
 "`This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance except as it may be modified by the company's classification of risks and premium rates in the event that the insured is injured or contracts sickness after having changed his occupation to one classified by the company as more hazardous than that stated in the policy or while he is doing any act or thing pertaining to any occupation so classified except ordinary duties about his residence or while engaged in recreation in which event the company will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the company for such more hazardous occupation.
 "`If the law of the state in which insured resides at any time this policy is issued requires that prior to its issue a statement of the premium rates and classification of risks pertaining to it shall be filed with the state official having supervision of insurance in such states, then the premium rate and classification of risks mentioned in this policy shall mean only such as have been last filed by the company in accordance with such law but if such filing is not required by such law then they shall mean the company's premium rates and classification of risks last made effective by it in such state prior to the occurrence of the loss for which the company is liable.'
"That the laws of the state of Oregon require the rates and classifications of insurance companies engaged in writing insurance of the nature and kind covered by the said policy issued to the said John M. *Page 335 
Dolan, as aforesaid, to be filed with the state, and that the defendant prior to the issuance of said policy of insurance to the said John M. Dolan in the manner provided by law duly caused to be filed with the insurance commissioner of the state of Oregon its rates and classifications, and that the said rates by reason of the filing of the same became the rates and classifications fixing the rates to be paid and the various classifications of occupation upon which indemnities were to be paid in case injury or accident resulted which would require the payment of indemnity for loss and that both plaintiff and defendant were bound by such rates and classifications.
"That subsequent to the issuance of the said policy the said John M. Dolan was transferred by the said Oregon-Washington Railroad and Navigation company from Kamela, Oregon, to Reith, Oregon, and that at Reith, Oregon, the duties of the said John M. Dolan required him to deliver messages and orders to train crews ad engine men in the yards of the said Oregon-Washington Railroad and Navigation company at Reith, Oregon, and that at the time of the accident which caused the death of the said John M. Dolan he was engaged in the delivery of a message or order to a train crew in the yards of the said Oregon-Washington Railroad and Navigation company at Reith, Oregon.
"That under the rates and classifications filed by the defendant with the state insurance commissioner the occupation of trick operator whose duties required him to deliver messages and orders to train crews in the yards of a railroad company were classified as more hazardous than those of an operator whose duties are described as telegraph operator, not in yard, office duties only, and that at the time of the accident which caused the death of the said John M. Dolan he was engaged in an occupation which under the said classification filed with the said insurance commissioner, as aforesaid, was more hazardous than that which was described in his application for such insurance. *Page 336 
"That under the classification given the said John M. Dolan the amount of said premium which was paid for accident insurance was $15.60 per annum, and that under the rates and classifications filed with the insurance commissioner, as aforesaid, the rate of accident insurance for an occupation where the duties of the insured required him to deliver messages to train crews in railroad yards was $37.80 per annum, or an increased rate on account of the difference in the risk of $22.20 per annum, and that by the rates and classifications filed with the office of the insurance commissioner, as aforesaid, when injury resulted the insured was entitled to receive the portion of the principal sum that the rate which such occupation carried bore to the rate actually paid or 15.60/37.80 of $2,000, or the sum of $825.40 plus the refund of the premium paid on the said policy, which was the sum of $70.30, and that this defendant immediately following the submission of proof of death and on or about the 3d day of January, 1927, tendered to the plaintiff the sum of $895.70 in payment of the amount due under said policy, and that said tender not only was made on said date but at frequent intervals since said date, and has at all times been available to the plaintiff, and the defendant at this time tenders into court the said sum of $895.70 in payment of the amount due under said policy."
A further answer and defense is interposed, which is not materially different from the first further and separate answer and defense. It is not necessary to repeat these answers here, but the substance of them will be considered in the opinion.
The plaintiff filed a reply, which put in issue the affirmative matter in the various answers filed by defendant, said reply containing the following matters in the nature of an estoppel:
"That, as alleged in her complaint on file herein the said John M. Dolan, at Kamela, Oregon, and at or *Page 337 
about the time of the issuance of the policy of insurance referred to in the complaint and answer herein, to him and at the request of one O.A. Lyman or James B. Shea who were at said time the agents of defendant company, signed a written application for the issuance to him of the policy of insurance referred to in the complaint and answer herein, a copy of which application is attached to and made a part of the policy of insurance referred to.
"That in said written application, the said John M. Dolan gave as his postoffice address Kamela, Union county, state of Oregon, and that his occupation was `telegraph operator, office duties only,' and that the words `telegraph operator, office duties only' were written into said application by the said O.A. Lyman or James B. Shea, agents of the said defendant company; that the said Dolan was then and there engaged as a telegraph operator for the Oregon-Washington Railroad and Navigation company, at Kamela, Oregon, and the nature of duties required that he receive and transmit telegraphic messages and that he deliver telegraphic messages personally to the train and engine crew in the railroad yards at Kamela, Oregon; that the said Dolan at said time fully and completely stated the nature of his duties to the said agent of the said defendant insurance company, and directed the attention of said agent to the fact that he was required to deliver said messages to the train and engine crews of said railroad, and requested the said agent that he be given a policy of insurance which would protect and indemnify him, and his beneficiaries therein named in the event of accidental death and injury resulting to him while engaged in such employment; that the said O.A. Lyman or James B. Shea, as agents of said defendant company, did then and there advise and assure said John M. Dolan that the labor so being performed by the said John M. Dolan was classified by the insurance company in fixing and determining risks and rates in the issuance of policies of insurance, as `office duties only'. And that, in the event of death or injury to said John M. Dolan while so engaged in the performance *Page 338 
of said duties, he or his beneficiaries would receive the full amount of indemnity as provided by the terms and provisions of said policy; and with full knowledge on the part of said defendant insurance company and its agents of the nature of the duties so being performed by the said John M. Dolan, and which he would be required to perform during the life of his policy, the premium paid for the insurance of said policy was accepted from the said John M. Dolan and the said policy was issued and delivered to him; that the said John M. Dolan knew nothing of the various classifications of risks made by the defendant company, or by the insurance commissioner of the state of Oregon, or of the premium rates and classifications of risk mentioned in the policy of insurance, said policy of insurance not having been issued at the time said application was signed; that thereafter and prior to the 16th day of November, 1926, the said John M. Dolan was transferred from Kamela, Oregon, to the town of Reith, in the county of Umatilla, state of Oregon, where he continued in the employ of the Oregon-Washington Railroad and Navigation company, as a telegraph operator and in the performance of duties of the same nature and character as he was engaged in performing at the time of the execution by him of the application herein referred to and the issuance and delivery to him of the policy of insurance referred to herein; that if the application so signed by the said John M. Dolan, as aforesaid, is erroneous in any respect defendant is, by reason of the facts alleged, estopped to claim that the same is erroneous or that its liability under said contract of insurance is otherwise than as set forth and claimed in plaintiff's complaint on file herein."
The cause being at issue was tried before a jury, which found a verdict of $2,170.30, together with 6 per cent interest from December 15, 1926, and $300 attorney's fees. From a judgment on this verdict, the defendant appeals.
AFFIRMED. *Page 339 
The most difficult part of this case consists in clearly stating the issues and the facts as they come here upon the transcript. We shall first state our conclusions from the testimony, and, afterwards, our reasons for so considering it.
There is no question in the testimony as to the fact that deceased signed the application contained in the transcript and annexed to and made a part of the policy; and there is no question as to the fact that, if his answers to questions asked in the application are correct, plaintiff would be entitled to recover the full amount of the policy in accordance with the verdict rendered by the jury. The whole case revolves about the proposition that the deceased made an incorrect statement to the company in regard to the nature of his employment, and that, by reason of this incorrect statement, the policy was issued to him as a select subject of insurance in which the amount payable was greater than it would have been had he been placed in another and more hazardous classification. The company has in its classification of risks several distinct classes of railroad telegraph operators. They are as follows:
 "Telegraph operator, station duties only ____ Med. Telegraph operator, office duties only in yard office _____________________________ Pref. *Page 340 
Telegraph operator, office duties only, not in yard office __________________________ Select Telegraph operator, in tower _______________ Ord. Telegraph operator, in tower not handling switch levers ___________________________ Pref."
The duties of the deceased included the taking and receiving of telegraphic messages and delivering them, when necessary, to the trains which might arrive at the station. This work would necessarily take him outside of the four walls of the office and to that portion of the yard where the trains might be situated. Technically, the classification in the policy was none of these, but would come practically within the designation of "telegraph operator, station duties only," as it also appears from the testimony that he assisted in storing the baggage, and that this also was a part of his duties. So the question turns to a great extent upon the plea of estoppel put in by the plaintiff to account for the discrepancy between the statement of duties in the application and the actual statement which plaintiff claims was made to the agent of the insurance company.
Mrs. Nolan, the wife of the deceased, was present when the application for insurance was signed, and stated in a general way in her testimony what his duties were, and also in a very meager way the fact that he made a statement of his duties to the agent soliciting the insurance; but when the question was asked of her to detail all the language used by the deceased in making the statement, an objection was interposed to this testimony, which objection was sustained by the court, and she was not permitted to detail this conversation. Counsel for plaintiff then made the following offer:
"The plaintiff offers to prove by the witness Nina T. Dolan that she was present at the conversation *Page 341 
between John M. Dolan and James N. Shay, the agent or representative of the insurance company; which conversation took place at Kamela, Oregon, on the 4th day of May, 1925; and that in said conversation the said James B. Shay solicited a policy of insurance, of accident insurance, from John M. Dolan, now deceased; and that the matter of the proper classification of the occupation of John M. Dolan came up for discussion between the parties: and that John M. Dolan then and there stated to the said James B. Shay that he worked as second trick operator for the O.W.R. N. Co.; and that his duties consisted of receiving and transmitting and delivering telegraph messages; and that he was required to go out of the station and deliver messages to the train crews and engine crews; and that he was also required to handle baggage and mail which came from the trains which stopped at Kamela while he was on shift as an operator; and that the agent with this information stated to said John M. Dolan that his classification was `telegraph operator office duties only,' and that it was then and there written into the application by the agent, James B. Shay and signed by said John M. Dolan.
"Mr. Smith: We object to the offer as incompetent, irrelevant and immaterial and for the further reason the application is the best evidence of the statements. I object also on the ground that there is no testimony in this case to show that Mr. Shay was an agent of the insurace company who had any authority to waive or change any provision of the policy and that the authority of the agent is limited by the terms of the policy."
This offer of proof was rejected and an exception saved to the jury.
We are clear that, upon the authorities, this testimony should have been admitted. In the case of Arneberg v. ContinentalCasualty Co., 178 Wis. 428 (190 N.W. 97, 29 A.L.R. 93, 96), the same company which is the defendant in this case, and a case in which the *Page 342 
identical question here raised seemed to be the turning point of the case, the court said:
"There is no justification in the evidence for a finding that the insured in any manner or degree misrepresented his occupation to the agent. The agent was an intimate acquaintance and associate of the insured, and had a thorough knowledge and understanding of the business in which he was engaged. These facts bring the case squarely within the authority of Warren v.Globe Indemnity Co., 170 Wis. 600 (176 N.W. 73), where under similar circumstances, the company was held bound by the classification.
"We think, too, that the principle of estoppel is applicable to a situation such as this, and the company should not be heard to challenge a classification made by its agent with full knowledge of the business or occupation in which the insured is engaged. It is quite generally, if not universally, held that where the insurer's agent fills out the application for an insurance policy, knowing or having been properly informed by the applicant of facts demanded by questions therein, mistakes in the application as to such facts do not avoid the policy: May v.Buckeye Mut. Ins. Co., 25 Wis. 291 (3 Am. Rep. 76); Dunbar v.Phenix Ins. Co., 72 Wis. 492 (40 N.W. 386); Mechler v. PhoenixIns. Co., 38 Wis. 665; Johnston v. Northwestern Live Stock Ins.Co., 94 Wis. 117 (68 N.W. 868); Union Mut. L. Ins. Co. v.Wilkinson, 13 Wall, 222 (20 L.ed. 617); Joyce Ins., §§ 472 et seq. See also cases collated in note to be found in 16 L.R.A. (N.S.) 1233, where the rule is stated in this language: `If the company's agent, in preparing the application, either by neglect, mistake, or fraud, without the knowledge of the insured, inserts false answers therein, when correct replies were given by insured to the question asked, the prevailing rule is that the fault of the agent must be borne by the company which sends him forth.'
"The rule is based on the principle that, under such circumstances, the agent is the agent of the company and not that of the insured, and that, where the insured fully and fairly states the facts, the agent who translates *Page 343 
such facts into the succinct phrasing of insurance parlance acts as the agent of the company. The reason for the rule is well stated in 2 Am. Lead. Cas. (Hare W.) 5th ed. 917, note, in the following language, which is frequently found quoted with approval:
"By `the interested or officious zeal of the agents employed by the insurance companies, who, in the wish to outbid each other and procure customers, not infrequently mislead the insured by a false or erroneous statement of what the application should contain, or, taking the preparation of it into their own hands, procure his signature by an assurance that it is properly drawn, and will meet the requirements of the policy * * * The better opinion seems to be that when this course is pursued the description of the risk should, though nominally proceeding from the insured, be regarded as the act of the insurers.'
"It is quite generally held that, by reason of this principle, accident insurance policies are not void because the agent who filled out the application did not properly classify the applicant's occupation. 1 C.J. 436, and cases cited. Accident insurance companies, however, urge that the rule should not be applied where, under the terms of an accident insurance policy, the insured is entitled to the amount of indemnity which the premium paid by him will purchase, in the occupation in which he is actually engaged, where his occupation is mistakenly classified in the application or in the policy. In other words, it is urged that the policy should be held void pro tanto, though not in toto. Two courts have apparently adopted this rule:Employers' Liability Assur. Corp v. Back, 42 C.C.A 286 (102 Fed. 229); Bothell v. National Casualty Co., 59 Wn. 209
(109 P. 590). In the latter case it is said, in effect, that the rule secures to the insured all to which he is entitled and protects the insurance company from the dishonesty of its agents. However wholesome or desirable such a rule may be, we do not appreciate the logic upon which it is based. We can discover no ground for the distinction which is necessary to render an insurance policy void pro tanto, but *Page 344 
not void in toto where the agent of the insurance company errs in the classification of the insured's occupation. If the act of the agent under such circumstances is the act of the insurance company, then his error is the error of the company, and the company should be responsible for the consequences thereof."
We have quoted extensively from this opinion and adopt it as a correct statement of the law. To like effect see Gotfredson v.German Commercial Accident Co., 218 Fed. 582; Pacific MutualLife Ins. Co. v. Snowden, 7 C.C.A. 264 (12 U.S. 704, 58 Fed. 342); Triple Link Mut. Indemnity Assoc. v. Williams, 121 Ala. 138
(77 Am. St. Rep. 34, 26 So. 19).
So we take the law to be pretty well established that testimony of the character here offered was admissible. Now what ensues when, as in this case, it is formally offered and rejected? The answer is plain and is thus laid down in Currie v.Waverly, etc., R.R. Co., 52 N.J.L. 381 (19 A.S.R. 452), as follows:
"The rule is imperative that where an offer is made and rejected, those things must be considered as true which the plaintiff in error offered to prove and was not permitted to prove."
To the same effect are Peak v. State, 50 N.J.L. 179, 219;Scotland County v. Hill, 112 U.S. 183, 186. This is the rule which is approved in Jones Commentaries on Evidence, vol. 5, p. 377, wherein it is said:
"If the trial judge has doubts about the good faith of an offer of testimony, he may insist upon the production of the witness and upon some attempt to make the proof before he rejects the offer; but if he does reject it, and allows a bill of exceptions which shows that the offer was actually made and refused, and there is nothing else in the record to indicate bad faith, an appellate court must assume that the proof could have been made, and govern itself accordingly." *Page 345 
In a case like the present, there is no other course left open to the court which it can pursue with justice to the party whose competent testimony is thus excluded. Here the plaintiff has recovered a verdict in accordance with her contention; therefore, she can not herself appeal. It is true that the evidence, which the court allowed to go to the jury is very scanty and might, or might not, justify the verdict, but from what we must assume upon appeal was competent and therefore treat as actually in the case, it is ample, and, as it was not contradicted, it would seem to be conclusive.
So the jury was justified in finding, and we are justified in finding, that the deceased made a full and fair statement of all the facts relating to his employment to the agent of the company who wrote it down, and, if he made a mistake, it was the company's mistake and not that of the deceased, and if upon the agent's interpretation of the duties of the deceased he wrote the answer which deceased signed, the company ought to be estopped from saying that its classification was incorrect. The lips of the man who made the statement and paid the premiums on this policy are sealed in death and we can not know, and have no right to suppose that, if the agent had informed him that he would be in a classification which would only leave his family a paltry sum for support, or that, if he informed him that to secure adequate insurance he would have to pay double the premium, he would in such an event have taken out the policy. The verdict was in accordance with the testimony actually introduced, and in accordance with what was erroneously excluded. The evidence does not indicate that the deceased was engaged in a different occupation at Rieth from that which he was pursuing at Kamela. The occupation is *Page 346 
one thing and the risk accompanying it quite another. The company has said, by its policy, and by the agent, that these duties constituted the deceased a preferred risk and that his occupation was a preferred occupation, and it is the occupation that we are dealing with and not special circumstances.
If a farmer, who reaps his grain with a cradle or mows his grass with a scythe, is classified in a policy as a farmer, the fact that, growing more prosperous (as few do nowadays), he buys a reaper or a mower to cut his grain or mow his grass, does not make him less a farmer by occupation, and his policy would not be forfeited because there might be a little more risk in driving the reaper than by cutting his grain with a cradle. It does not appear from the testimony, although it may be true as a matter of fact, that there were greater risks in Rieth than there were in Kamela, but the occupation was the same. As between the insurance company and the deceased and his beneficiary, the company has established a conventional classification and being bound by the representations of its agent it ought not to be permitted to say that its classification was wrong. No charge of fraud upon the part of the deceased is made in the answer. Whatever action he took, he took in good faith. He made no wilful false representation, and what representation appears in the application was induced by the acts of the company's agent. In this view of the case, while the jury have "builded better than they knew" their verdict is right and should be allowed to stand. There are other objections, but, in view of our holding on the testimony, they become immaterial here and the judgment is affirmed. AFFIRMED.
BEAN, RAND and ROSSMAN, JJ., concur. *Page 347