Argued at Pendleton, May 8; affirmed July 30; reversed and remanded on petition for rehearing October 15; second petition for rehearing denied December 17, 1929

# NINA T. DOLAN *v.* THE CONTINENTAL CASUALTY CO.

(279 Pac. 855, 281 Pac. 182, 283 Pac. 15)

For appellant there was a brief over the names of *Mr. A. S. Grant, Mr. E. L. McDougal* and *Mr. A. A. Smith* with an oral argument by *Mr. Grant.*

For respondent there was a brief over the names of *Mr. George Donart* and *Messrs. Nichols, Hallock & Donald* with an oral argument by *Mr. James. T. Donald.*

McBRIDE, J.  The most difficult part of this case consists in clearly stating the issues and the facts as they come here upon the transcript.  We shall first state our conclusions from the testimony, and, afterwards, our reasons for so considering it.

There is no question in the testimony as to the fact that deceased signed the application contained in the transcript and annexed to and made a part of the policy; and there is no question as to the fact that, if his answers to questions asked in the application are correct, plaintiff would be entitled to recover the full amount of the policy in accordance with the verdict rendered by the jury.  The whole case revolves about the proposition that the deceased made an incorrect statement to the company in regard to the nature of his employment, and that, by reason of this incorrect statement, the policy was issued to him as a select subject of insurance in which the amount payable was greater than it would have been had he been placed in another and more hazardous classification.  The company has in its classification of risks several distinct classes of railroad telegraph operators.  They are as follows:

"Telegraph operator, station duties only .... Med.
Telegraph operator, office duties only in
yard office ......................................... Pref.

Telegraph operator, office duties only, not
   in yard office .................................................. Select
Telegraph operator, in tower ........................ Ord.
Telegraph operator, in tower not handling
   switch levers ............................................... Pref.''

The duties of the deceased included the taking and receiving of telegraphic messages and delivering them, when necessary, to the trains which might arrive at the station. This work would necessarily take him outside of the four walls of the office and to that portion of the yard where the trains might be situated. Technically, the classification in the policy was none of these, but would come practically within the designation of ''telegraph operator, station duties only,'' as it also appears from the testimony that he assisted in storing the baggage, and that this also was a part of his duties. So the question turns to a great extent upon the plea of estoppel put in by the plaintiff to account for the discrepancy between the statement of duties in the application and the actual statement which plaintiff claims was made to the agent of the insurance company.

■■ Mrs. Nolan, the wife of the deceased, was present when the application for insurance was signed, and stated in a general way in her testimony what his duties were, and also in a very meager way the fact that he made a statement of his duties to the agent soliciting the insurance; but when the question was asked of her to detail all the language used by the deceased in making the statement, an objection was interposed to this testimony, which objection was sustained by the court, and she was not permitted to detail this conversation. Counsel for plaintiff then made the following offer:

''The plaintiff offers to prove by the witness Nina T. Dolan that she was present at the conversation

between John M. Dolan and James N. Shay, the agent or representative of the insurance company; which conversation took place at Kamela, Oregon, on the 4th day of May, 1925; and that in said conversation the said James B. Shay solicited a policy of insurance, of accident insurance, from John M. Dolan, now deceased; and that the matter of the proper classification of the occupation of John M. Dolan came up for discussion between the parties: and that John M. Dolan then and there stated to the said James B. Shay that he worked as second trick operator for the O.W. R. & N. Co.; and that his duties consisted of receiving and transmitting and delivering telegraph messages; and that he was required to go out of the station and deliver messages to the train crews and engine crews; and that he was also required to handle baggage and mail which came from the trains which stopped at Kamela while he was on shift as an operator; and that the agent with this information stated to said John M. Dolan that his classification was 'telegraph operator office duties only,' and that it was then and there written into the application by the agent, James B. Shay and signed by said John M. Dolan.

"Mr. Smith: We object to the offer as incompetent, irrelevant and immaterial and for the further reason the application is the best evidence of the statements. I object also on the ground that there is no testimony in this case to show that Mr. Shay was an agent of the insurace company who had any authority to waive or change any provision of the policy and that the authority of the agent is limited by the terms of the policy."

This offer of proof was rejected and an exception saved to the jury.

We are clear that, upon the authorities, this testimony should have been admitted. In the case of *Arneberg v. Continental Casualty Co.,* 178 Wis. 428 (190 N. W. 97, 29 A. L. R. 93, 96), the same company which is the defendant in this case, and a case in which the

identical question here raised seemed to be the turning point of the case, the court said:

"There is no justification in the evidence for a finding that the insured in any manner or degree misrepresented his occupation to the agent. The agent was an intimate acquaintance and associate of the insured, and had a thorough knowledge and understanding of the business in which he was engaged. These facts bring the case squarely within the authority of *Warren v. Globe Indemnity Co.*, 170 Wis. 600 (176 N. W. 73), where under similar circumstances, the company was held bound by the classification.

"We think, too, that the principle of estoppel is applicable to a situation such as this, and the company should not be heard to challenge a classification made by its agent with full knowledge of the business or occupation in which the insured is engaged. It is quite generally, if not universally, held that where the insurer's agent fills out the application for an insurance policy, knowing or having been properly informed by the applicant of facts demanded by questions therein, mistakes in the application as to such facts do not avoid the policy: *May v. Buckeye Mut. Ins. Co.*, 25 Wis. 291 (3 Am. Rep. 76); *Dunbar v. Phenix Ins. Co.*, 72 Wis. 492 (40 N. W. 386); *Mechler v. Phoenix Ins. Co.*, 38 Wis. 665; *Johnston v. Northwestern Live Stock Ins. Co.*, 94 Wis. 117 (68 N. W. 868); *Union Mut. L. Ins. Co. v. Wilkinson*, 13 Wall, 222 (20 L. ed. 617); Joyce Ins., §§ 472 et seq. See also cases collated in note to be found in 16 L. R. A. (N.S.) 1233, where the rule is stated in this language: 'If the company's agent, in preparing the application, either by neglect, mistake, or fraud, without the knowledge of the insured, inserts false answers therein, when correct replies were given by insured to the question asked, the prevailing rule is that the fault of the agent must be borne by the company which sends him forth.'

"The rule is based on the principle that, under such circumstances, the agent is the agent of the company and not that of the insured, and that, where the insured fully and fairly states the facts, the agent who trans-

lates such facts into the succinct phrasing of insurance parlance acts as the agent of the company. The reason for the rule is well stated in 2 Am. Lead. Cas. (Hare & W.) 5th ed. 917, note, in the following language, which is frequently found quoted with approval:

"By 'the interested or officious zeal of the agents employed by the insurance companies, who, in the wish to outbid each other and procure customers, not infrequently mislead the insured by a false or erroneous statement of what the application should contain, or, taking the preparation of it into their own hands, procure his signature by an assurance that it is properly drawn, and will meet the requirements of the policy * * * The better opinion seems to be that when this course is pursued the description of the risk should, though nominally proceeding from the insured, be regarded as the act of the insurers.'

"It is quite generally held that, by reason of this principle, accident insurance policies are not void because the agent who filled out the application did not properly classify the applicant's occupation. 1 C. J. 436, and cases cited. Accident insurance companies, however, urge that the rule should not be applied where, under the terms of an accident insurance policy, the insured is entitled to the amount of indemnity which the premium paid by him will purchase, in the occupation in which he is actually engaged, where his occupation is mistakenly classified in the application or in the policy. In other words, it is urged that the policy should be held void pro tanto, though not in toto. Two courts have apparently adopted this rule: *Employers' Liability Assur. Corp v. Back,* 42 C. C. A 286 (102 Fed. 229) ; *Bothell v. National Casualty Co.,* 59 Wash. 209 (109 Pac. 590). In the latter case it is said, in effect, that the rule secures to the insured all to which he is entitled and protects the insurance company from the dishonesty of its agents. However wholesome or desirable such a rule may be, we do not appreciate the logic upon which it is based. We can discover no ground for the distinction which is necessary to render an insurance policy void pro tanto, but

not void in toto where the agent of the insurance company errs in the classification of the insured's occupation. If the act of the agent under such circumstances is the act of the insurance company, then his error is the error of the company, and the company should be responsible for the consequences thereof."

We have quoted extensively from this opinion and adopt it as a correct statement of the law. To like effect see *Gotfredson v. German Commercial Accident Co.,* 218 Fed. 582; *Pacific Mutual Life Ins. Co. v. Snowden,* 7 C. C. A. 264 (12 U. S. 704, 58 Fed. 342); *Triple Link Mut. Indemnity Assoc. v. Williams,* 121 Ala. 138 (77 Am. St. Rep. 34, 26 So. 19).

■ So we take the law to be pretty well established that testimony of the character here offered was admissible. Now what ensues when, as in this case, it is formally offered and rejected? The answer is plain and is thus laid down in *Currie v. Waverly, etc., R. R. Co.,* 52 N. J. L. 381 (19 A. S. R. 452), as follows:

"The rule is imperative that where an offer is made and rejected, those things must be considered as true which the plaintiff in error offered to prove and was not permitted to prove."

To the same effect are *Peak v. State,* 50 N. J. L. 179, 219; *Scotland County v. Hill,* 112 U. S. 183, 186. This is the rule which is approved in Jones Commentaries on Evidence, vol. 5, p. 377, wherein it is said:

"If the trial judge has doubts about the good faith of an offer of testimony, he may insist upon the production of the witness and upon some attempt to make the proof before he rejects the offer; but if he does reject it, and allows a bill of exceptions which shows that the offer was actually made and refused, and there is nothing else in the record to indicate bad faith, an appellate court must assume that the proof could have been made, and govern itself accordingly."

■ In a case like the present, there is no other course left open to the court which it can pursue with justice to the party whose competent testimony is thus excluded. Here the plaintiff has recovered a verdict in accordance with her contention; therefore, she can not herself appeal. It is true that the evidence, which the court allowed to go to the jury is very scanty and might, or might not, justify the verdict, but from what we must assume upon appeal was competent and therefore treat as actually in the case, it is ample, and, as it was not contradicted, it would seem to be conclusive.

So the jury was justified in finding, and we are justified in finding, that the deceased made a full and fair statement of all the facts relating to his employment to the agent of the company who wrote it down, and, if he made a mistake, it was the company's mistake and not that of the deceased, and if upon the agent's interpretation of the duties of the deceased he wrote the answer which deceased signed, the company ought to be estopped from saying that its classification was incorrect. The lips of the man who made the statement and paid the premiums on this policy are sealed in death and we can not know, and have no right to suppose that, if the agent had informed him that he would be in a classification which would only leave his family a paltry sum for support, or that, if he informed him that to secure adequate insurance he would have to pay double the premium, he would in such an event have taken out the policy. The verdict was in accordance with the testimony actually introduced, and in accordance with what was erroneously excluded. The evidence does not indicate that the deceased was engaged in a different occupation at Rieth from that which he was pursuing at Kamela. The occupation is

one thing and the risk accompanying it quite another. The company has said, by its policy, and by the agent, that these duties constituted the deceased a preferred risk and that his occupation was a preferred occupation, and it is the occupation that we are dealing with and not special circumstances.

If a farmer, who reaps his grain with a cradle or mows his grass with a scythe, is classified in a policy as a farmer, the fact that, growing more prosperous (as few do nowadays), he buys a reaper or a mower to cut his grain or mow his grass, does not make him less a farmer by occupation, and his policy would not be forfeited because there might be a little more risk in driving the reaper than by cutting his grain with a cradle. It does not appear from the testimony, although it may be true as a matter of fact, that there were greater risks in Rieth than there were in Kamela, but the occupation was the same. As between the insurance company and the deceased and his beneficiary, the company has established a conventional classification and being bound by the representations of its agent it ought not to be permitted to say that its classification was wrong. No charge of fraud upon the part of the deceased is made in the answer. Whatever action he took, he took in good faith. He made no wilful false representation, and what representation appears in the application was induced by the acts of the company's agent. In this view of the case, while the jury have "builded better than they knew" their verdict is right and should be allowed to stand. There are other objections, but, in view of our holding on the testimony, they become immaterial here and the judgment is affirmed.                          AFFIRMED.

BEAN, RAND and ROSSMAN, JJ., concur.

Reversed and remanded on petition for rehearing October 15, 1929

On Petition for Rehearing
(281 Pac. 182)

For appellant *Mr. A. S. Grant, Mr. E. L. McDougal* and *Mr. A. A. Smith.*

For respondent *Mr. George Donart* and *Messrs. Nichols, Hallock & Donald.*

PER CURIAM. We have carefully considered the petition for rehearing in this case and nothing therein contained has been sufficient to change our views in regard to the matter stated in the opinion.

■ We are disposed, however, to modify our former opinion in regard to the procedure. We there held that the testimony offered by the plaintiff and rejected by the court was admissible and that the court erred in rejecting the offer made. Following the decision indicated in our opinion, we held that such offered testimony should be treated as if it had been actually given; and, further, that under subdivision 3c of article 7 of the constitution we would treat it as though it had been actually admitted and affirm the judgment. We had in mind the distinction which subd. 3c of article 7 of the constitution has made in regard to considering the evidence on appeal, but upon further consideration we think it only fair that the defendant should be entitled to a cross-examination in respect to the testimony offered and erroneously rejected, and the court is now of the opinion that the case should be retried on that account rather than we should consider the offer without regard to what a cross-examination might have developed.

The judgment will therefore be reversed and a new trial ordered.

REVERSED AND NEW TRIAL ORDERED.

Second petition for rehearing denied Dec. 17, 1929.

ON SECOND PETITION FOR REHEARING

(283 Pac. 15)

For appellant *Mr. A. S. Grant, Mr. E. L. McDougal* and *Mr. A. A. Smith.*

For respondent *Mr. George Donart* and *Messrs. Nichols, Hallock & Donald.*

McBRIDE, J. Defendant in a petition for rehearing succeeded in convincing the court that fairness required the evidence offered by plaintiff and rejected by the court should be subjected to the test of cross-examination, and that this would require a reversal of the case. Under the decisions cited in our original opinion, the courts, while holding that such offer erroneously rejected would be treated on appeal as actually given, sent the matter back for retrial. This was largely because of the fact that in those states there was no such provision as that contained in section 3c of article VII of our amended constitution, which, under certain conditions, authorized the supreme court, notwithstanding error, to retry the case and render such judgment as it deemed just. Under this provision, we were at first of the opinion that we would be justified in treating the offered testimony as having been actually given, but upon a petition for rehearing, to which by oversight the counsel for plaintiff were not requested to reply, we were of the opinion that, while we had the legal right to consider the testimony offered and rejected as actually given and predicate an opinion on that theory, such testimony constituted practically the pivotal point in the case, and as the witness, whose testimony was offered, was the plaintiff, and therefore deeply interested in the result, it would be fair to send the case back for retrial so that she might be cross-examined.

■ It might be said that, since it was the error of defendant's counsel that produced the exclusion of the testimony, they ought to be compelled to abide the result, but the question of the admissibility of such testimony was a close one, and one upon which courts are divided. The objection to its admissibility was no doubt made in good faith by eminent counsel, and, while we felt compelled, by our view of the law, to disagree with them, we also felt that entire fairness would justify us in allowing them an opportunity to cross-examine a vital and interested witness. For this reason we concluded to give them an opportunity to do so notwithstanding the fact that the situation here was largely the result of the mistaken view of the law contended for by defendant's counsel.

Now defendant's counsel files a cost bill consisting of a large amount and contends that, as the case has been reversed and sent back for a new trial, it is entitled to recover those costs brought about in a large measure by its own mistake. This is turning the leniency of this court into an instrument of oppression in a condition of affairs never contemplated by any legislation, and we will not assent to the proposition, that a party may by his own wrong bring about a peculiar state of affairs which, in the interests of justice, seem to require a new trial in spite of his error, and tax the costs of his mistake upon an innocent party by invoking a technical construction of the law.

We grant the defendant a new trial coupled with the condition that the costs abide the result of a final judgment, and our previous order will be so amended. This is the universal practice in the circuit courts on granting a new trial and in this anomalous instance it seems to be just.     REHEARING DENIED.