Argued and submitted May 8, 1991; reassigned August 11, decision of Court of Appeals affirmed on different grounds and judgment of circuit court affirmed December 31, 1992, reconsideration denied February 23, 1993

Abe F. and Saundra A. DEJONGE,
dba Midway Grocery,
*Petitioners on Review,*

*v.*

MUTUAL OF ENUMCLAW,
a Washington corporation,
*Respondent on Review.*

*and*

KEESECKER INSURANCE,
an Oregon corporation,
*Defendant.*

(CC 86-0829; CA A61480; SC S37708)

843 P2d 914

238

Margaret H. Leek Leiberan, of Leiberan & Gazeley, Portland, argued the cause and filed the petition for petitioners on review.

Lynn E. Ashcroft, of Rhoten, Speerstra, Rinehart & Ashcroft, Salem, argued the cause for respondent on review. With him on the response brief was Sam F. Speerstra, Salem.

GRABER, J.

Unis, J., dissented and filed an opinion in which Van Hoomissen and Fadeley, JJ., joined.

## GRABER, J.

The issue in this declaratory judgment action is whether defendant insurer is estopped to deny liability coverage to plaintiffs based on a policy exclusion.[1] Plaintiffs sought a declaration that their liability insurance policy with defendant covered a wrongful death action, in which it was alleged that plaintiffs had negligently sold alcoholic beverages to a minor who later, and as a result of ingesting the alcoholic beverage, caused the death that was the subject of the wrongful death action. The jury in the present case returned a verdict for plaintiffs. The trial court granted defendant's motion for judgment notwithstanding the verdict and entered judgment for defendant, ruling that plaintiffs had failed to prove all the elements of an equitable estoppel. The Court of Appeals affirmed on the ground that there was no evidence of a false representation. *DeJonge v. Mutual of Enumclaw*, 104 Or App 296, 800 P2d 313 (1990). We affirm, but on different grounds. We hold that the insurance policy excluded coverage for liability related to the sale of liquor to a minor and that defendant was not estopped to deny such coverage.

Because plaintiffs prevailed before the jury, we review the evidence in the light most favorable to them. *Jacobs v. Tidewater Barge Lines*, 277 Or 809, 811, 562 P2d 545 (1977). In 1980, plaintiffs bought a small grocery store. Shortly afterwards they met with an insurance agent, Keesecker, to obtain coverage for the store. Plaintiffs testified that they told Keesecker that they wanted "full" or "complete" coverage. Keesecker replied that "he was there to serve [plaintiffs'] purposes."

Although Keesecker knew that plaintiffs sold alcoholic beverages at the store, he never specifically discussed coverage for liquor liability. Keesecker obtained for plaintiffs

---

[1] The dissent asserts "that the sole question to be decided by this court in this case [is] whether there was sufficient evidence to support [the] jury verdict" on plaintiffs' estoppel claim. 315 Or at 246. The dissent notes that one member of the court expressed that view during oral argument as well.

After argument, however, the court asked the parties for supplemental briefs on the question whether the issue that we decide here is properly before us. The parties, and we, agree that the issue here decided was preserved (both orally and in writing) at the trial court and was argued in defendant's brief to the Court of Appeals as an alternative basis for affirmance.

an insurance policy issued by defendant. The policy excluded coverage for liquor liability, as follows:

## "I. COVERAGE S – STOREKEEPER'S LIABILITY

"* * * * *

### "Exclusions

"This coverage does not apply:

"* * * * *

"(h)   to **bodily injury** or **property damage** for which the **insured** or his indemnitee may be held liable

   "(1)   as a person or organization engaged in the business of * * * selling or serving alcoholic beverages, or

   "(2)   * * * as an owner or lessor of premises used for such purposes, if such liability is imposed

"* * * * *

   "(ii)   by reason of the selling, serving or giving of any alcoholic beverage to a minor * * *." (Bold in original.)

Plaintiffs did not read the policy in the three years following its original issuance to them and were not aware of the exclusion until they were named as defendants in the wrongful death action. Plaintiffs tendered the defense of the action to defendant, which rejected the tender. A judgment of $675,000 was entered against plaintiffs in the wrongful death action. They then brought this action for a declaratory judgment.[2]

Plaintiffs do not dispute that their only remaining claim is under the policy and that the policy itself clearly excludes coverage in this case. At trial, the sole issue submitted to the jury was whether defendant was estopped to rely on the exclusion. The jury returned a verdict for plaintiffs. Defendant moved for a judgment notwithstanding the verdict, having previously moved for a directed verdict. In addition to arguing that plaintiffs had failed to prove all the

---

[2] Plaintiffs also brought an action against Keesecker, alleging negligent failure to procure adequate insurance. The trial court granted Keesecker's motion for summary judgment, and the Court of Appeals affirmed on the ground that the action was barred by the applicable statute of limitations. Plaintiffs do not challenge that holding before this court.

elements of estoppel, defendant argued in its motion for directed verdict and in its motion for judgment notwithstanding the verdict that, as a matter of law, estoppel was not available in this case.

■    The rule in Oregon supports defendant's contention that, in this situation, estoppel cannot be used to negate an express exclusion in a policy of insurance. In *ABCD...Vision v. Fireman's Fund Ins. Companies*, 304 Or 301, 307, 744 P2d 998 (1987), this court held that "[e]stoppel cannot be invoked to expand insurance coverage or the scope of an insurance contract." The *ABCD...Vision* court distinguished between using estoppel affirmatively, to *create* a right to coverage not contained in the insuring clauses of the policy, and using it defensively, to *preserve* a right to coverage already acquired by preventing its forfeiture. The court held that estoppel is not available in the former situation to negate an express exclusion in the written contract but is available in the latter situation to avoid a condition of forfeiture of coverage. 304 Or at 307. In *Wyoming Sawmills v. Transportation Ins. Co.*, 282 Or 401, 410, 578 P2d 1253 (1978), this court had held that "the rule [precluding estoppel or waiver] must be limited to failure to assert an exclusion."[3]

■    Plaintiffs do not quarrel with the specific rule, stated in *ABCD...Vision v. Fireman's Fund Ins. Companies, supra*, and *Wyoming Sawmills v. Transportation Ins. Co., supra*, that estoppel cannot be invoked to negate an express exclusion in a written insurance policy. Instead, to avoid that rule, plaintiffs ask us to superimpose a distinction based on the

---

[3] Most jurisdictions have ruled that estoppel is not available to expand the coverage of a written policy so as to protect the insured against risks expressly excluded. *See* Annot, 1 ALR3d 1139, 1143 (1965 & Supp 1991) (collecting cases from over 30 states, including Oregon, that follow that rule). Courts have stated various reasons for that rule. The most prevalent is that courts cannot create a new contract for the parties. *See, e.g., Inland Mutual Insurance Company v. Hightower*, 274 Ala 52, 145 So 2d 422 (1962) (reasoning that to permit expansion of coverage by estoppel would be to create a new contract for which no consideration had been paid). A related rationale is that an insurer should not be required by estoppel to pay a loss for which it charged no premium. Annot, *supra*, 1 ALR3d at 1144. (Plaintiffs acknowledged in this case, and the record discloses, that a policy with the desired coverage would have cost them an additional $85.30 to $170.60 per year.) In addition to those policy considerations, in Oregon there is a third rationale for the rule, expressed in our cases, that estoppel is not available to expand the coverage afforded by a written insurance policy: the legislative rule established in ORS 742.016(1). That version of the parol evidence rule will be discussed in the text, below.

*timing* of the conduct on which the insured seeks to rely. Plaintiffs contend that the rule precluding the use of estoppel to negate an express written exclusion applies only to an insurer's conduct after the *loss*, not to conduct before the loss. The pertinent distinction with respect to *timing* in a claim of estoppel to negate an express written exclusion, however, is between conduct before and after the *issuance of the policy*. The legislature has expressed this distinction in a form of the parol evidence rule that applies to written contracts of insurance. ORS 742.016(1) provides:

> "Except as provided in ORS 742.043 [concerning binders of insurance], *every contract of insurance shall be construed according to the terms and conditions of the policy*. When the contract is made pursuant to a written application therefor, if the insurer delivers a copy of such application with the policy to the insured, thereupon such application shall become a part of the insurance policy. Any application that is not so delivered to the insured shall not be a part of the insurance policy and the insurer shall be precluded from introducing such application as evidence in any action based upon or involving the policy. Any oral representations by the insured that are not included in an application shall not be a part of the insurance policy and the insurer shall be precluded from introducing such representations as evidence in any action based upon or involving the policy." (Emphasis added.)

In 1917, the legislature first enacted the substantial equivalent of ORS 742.016 (formerly ORS 736.305 and then ORS 743.045). 1917 General Laws of Oregon, ch 203, § 12.

Although there are exceptional circumstances in which an insurer can be estopped to deny the existence of coverage notwithstanding the policy's terms and conditions,[4]

---

[4] *See Knappenberger v. Cascade Ins. Co.*, 259 Or 392, 398, 487 P2d 80 (1971) (stating general rule); *Bunn v. Monarch Life Insurance*, 257 Or 409, 478 P2d 363 (1970) (in case involving an insurance policy that had an application attached, insured was not bound by false representation inserted in the application by insurer's agent); *Simmons v. Washington Fidelity National Insurance Co.*, 136 Or 400, 299 P 294 (1931) (insured was allowed to recover under theory of equitable estoppel despite rule of parol evidence statute, because insured could neither read nor write); *Dolan v. Continental Casualty Co.*, 131 Or 327, 279 P 855, 281 P 182, 283 P 15 (1929) (recovery in estoppel was permitted despite parol evidence statute, because a reading of the insurance application by the insured would not have revealed the false statement).

the statute states the rule that written contracts of insurance "shall be construed according to the terms and conditions of the policy." ORS 742.016(1). In the absence of those exceptional circumstances, none of which is present here — indeed, none of which plaintiffs even claim to be present here — the insured is bound by the provisions of the policy issued. To the extent that *timing* creates a dividing line in deciding the validity of an express exclusion in a written policy, ORS 742.016(1) suggests that the relevant time is the time when the policy is issued.

Plaintiffs argue — notwithstanding the rule of *ABCD...Vision v. Fireman's Fund Ins. Companies, supra,* and this court's other estoppel cases — that *Paulson v. Western Life Insurance Co.,* 292 Or 38, 636 P2d 935 (1981), limits the usual rule precluding the use of estoppel to negate an express exclusion only to an insurer's conduct *after* the loss. Plaintiffs read *Paulson* too restrictively and without sufficient regard for the context provided by its facts and by ORS 742.016(1).

In *Paulson v. Western Life Insurance Co., supra,* the employer, holder of a group health insurance plan, told a new employee that he would not have to prove insurability if he applied for insurance within six months of his date of hire. In fact, under the group policy, employees had to enroll within 31 days in order to avoid proving insurability. About two months after beginning work, the employee filled out the application for coverage, which was forwarded to the insurer with the premium. The insurer wrote to the employer that the employee had to furnish satisfactory evidence of insurability, but the employer did not inform the employee. Meanwhile, the employee's dependent daughter had fallen ill and had incurred substantial medical expenses. The insurer denied coverage. This court held that estoppel was available to preclude the insurer from asserting that no coverage existed due to untimely filing of the employee's application.

The *Paulson* court noted that two previous cases[5] holding that estoppel could not be invoked to "creat[e] an original grant of coverage" concerned post-loss conduct by

---

[5] *Wyoming Sawmills v. Transportation Ins. Co.,* 282 Or 401, 578 P2d 1253 (1978); *Schaeffer v. Mill Owners Ins. Co.,* 242 Or 150, 407 P2d 614 (1965).

the insurer or its agent. 292 Or at 51 (quoting *Wyoming Sawmills v. Transportation Ins. Co., supra,* 282 Or at 410). The court distinguished *Wyoming Sawmills* and *Schaeffer v. Mill Owners Ins. Co.,* 242 Or 150, 407 P2d 614 (1965), reasoning that, in those cases, the insured could not show a detriment arising from the conduct. Because detriment is an element of estoppel, a successful claim of estoppel could not be made in those cases. *Paulson v. Western Life Insurance Co., supra,* 292 Or at 51-52. However, the pre-loss/post-loss distinction was not the basis for the court's holding.

*Paulson v. Western Life Insurance Co., supra,* concerned when an individual had to apply for existing group insurance of a conceded scope, not what the scope of the available coverage would be. The court emphasized that there was "no question that [the employee] would have received [the coverage] had he enrolled within 31 days." 292 Or at 52. "[T]he plaintiff was entitled to virtually automatic coverage without proof of insurability if application was made within 31 days and * * * but for [the employer's] statement such coverage would have been in effect at the time the loss occurred." *Ibid.* The court acknowledged that the defendant was "correct in the assertion that there are limitations as to the extent to which insurance coverage can be *created* by estoppel," *id.* at 51 (emphasis in original), but went on to explain that this was not such a case. *Id.* at 52. In other words, the court's discussion indicated a belief that estoppel was not being used to create coverage in the sense of enlarging the insuring clauses of the group policy or denying effect to an exclusion. Neither the scope of coverage nor any express exclusion from coverage was at issue.

*Paulson* also may be read as an example of a situation, mentioned in the parol evidence cases cited above, in which the insured was dissuaded from reading or understanding the policy. However one reads *Paulson,* it is entirely consistent with a distinction between pre-*policy* and post-*policy* losses. In *Paulson,* the representation was made *and* the loss occurred before the individual employee was brought under the group policy. *See id.* at 40-43, 52-53 (discussing facts). Thus, the facts of the case did not require the court to consider what result would occur if the representation were made before the written policy issued but the loss occurred

afterwards. In contrast, the two prior cases discussed by the court in *Paulson*, 292 Or at 51-52, involved losses that had occurred after the issuance of the contracts of insurance, whose coverage terms were held to be binding. "In both of those cases the agreement was struck and the policy was issued." *Id.* at 52.

*ABCD...Vision v. Fireman's Fund Ins. Companies, supra*, decided six years after *Paulson*, likewise did not draw a legal distinction between pre-loss and post-loss conduct, although factually the case concerned post-loss conduct. Rather, the case concerned only the topic of the representations on which the insured relied. The court restated the across-the-board rule that estoppel cannot be used to expand coverage and then distinguished between using estoppel to negate an express exclusion in the written contract of insurance (not permitted) and using estoppel to avoid a condition of forfeiture of coverage (permitted). 304 Or at 307.

As discussed above, *Paulson v. Western Life Insurance Co., supra*, does not suggest that this court has drawn a legal distinction between pre-loss and post-loss conduct. The mere fact that our other estoppel cases happened to involve post-loss conduct, *e.g., ABCD...Vision v. Fireman's Fund Ins. Companies, supra; Wyoming Sawmills v. Transportation Ins. Co., supra; Schaeffer v. Mill Owners Ins. Co., supra*, does not create a legal rule that the principles discussed in them can apply only to post-loss conduct. We decline to adopt the legal distinction with respect to timing that plaintiffs suggest. The often-expressed principle that estoppel cannot be invoked to negate an express exclusion in a written insurance policy applies even when the alleged representation occurred before the loss, at least where, as here, the exclusion on which the insurer relies is unambiguous[6] and the insurer did not

---

[6] This case is not like *Farley v. United Pacific Ins. Co.*, 269 Or 549, 525 P2d 1003 (1974). There, the insurance agent read over the telephone to the insured the provision that was going to be included in the policy. The agent told the insured that he was covered under that wording. As it turned out, that wording excluded the risk for which the insured wanted coverage. It was the agent's construction of the policy provision that this court found pivotal: "It seems entirely reasonable to us that [the insured] should not appreciate the fact that the language of the policy would not cover him when considered in the face of the agent's assurance that he was covered." 269 Or at 558. "[T]he insurance company is estopped to assert the actual meaning of the provisions of its policy because the insured is entitled to rely upon a contrary interpretation of those provisions by the company's general agent." *Id.* at 559. The

dissuade the insured from reading or understanding the exclusion.[7] The parties' insurance policy excluded coverage for liability related to the sale of liquor to a minor, and defendant was not estopped to deny such coverage.[8]

The decision of the Court of Appeals is affirmed on different grounds. The judgment of the circuit court is affirmed.

## UNIS, J., dissenting.

During oral argument before this court, it became apparent and defendant acknowledged that the sole question to be decided by this court in this case was whether there was sufficient evidence to support a jury verdict in which defendant was estopped to deny that it had provided coverage for liquor liability in plaintiffs' insurance policy.[1] I believe that

---

issue here is not interpretation of an ambiguous provision, but the validity of a clear provision.

[7] Plaintiffs do *not* argue that the exclusion is ambiguous or that the insurer dissuaded them from reading or understanding the exclusion. They claim only that the pre-issuance representation as to the extent of coverage that would be provided by the later-issued written policy survived the issuance of the written policy — notwithstanding the policy's express, unambiguous exclusion of the desired coverage — solely because the representation occurred before the loss occurred.

[8] In a situation such as the one at bar, the insured may have a remedy in the form of a claim against the *agent* for negligent *failure* to procure insurance. *See* note 2, *ante*. That claim does not translate *ipso facto* to a claim against the *insurer* under the policy that *was* procured.

[1] At oral argument in this case, a member of this court who is now joining the majority made the following comments to counsel for defendant:

JUSTICE: "[T]his case came to the Court of Appeals on an appeal from a decision of the trial court granting a judgment notwithstanding the verdict.

"* * * * *

"[T]he only thing the Court of Appeals decided was that there was no evidence of a false representation. And that ended the Court of Appeals' need to discuss anything else. .

"* * * * *

"But I want to be sure that, in our dealing with this case, we not trespass onto a whole series of other questions which could arise were we to reverse the Court of Appeals' decision on the ground they chose to decide the case on. Because whatever else is left, were we to do that, is a matter for the Court of Appeals in the first instance, and not for us, I think. So I guess what I'm saying is, this is kind of an admonition to you. I think maybe you've got all sorts of ammunition to justify ultimately either the judgment notwithstanding the verdict or at least to the granting of a new trial, but that has nothing to do with what we ought to do. Our sole question I think ought to be, the sole question we address I think ought

this opinion should be confined to answering that question, as was my original draft opinion in this case, and I believe that there was sufficient evidence to support the jury verdict. *See* Or Const, Art VII (Amended), § 3 ("no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict"); *Jacobs v. Tidewater Barge Lines*, 277 Or 809, 811, 562 P2d 545 (1977) (this court reviews the evidence in the light most favorable to the party which prevailed before the jury and accepts every reasonable inference that may be drawn from the evidence in that party's favor).

The majority instead reaches out to discuss and decide issues which are not before us. Unfortunately, in doing so, the majority (1) incorrectly states the law of estoppel; (2) incorrectly applies the law that it states; and (3) creates dangerous precedent.

---

to be, whether there was evidence in this record from which an appropriately instructed jury could have found the element of a false representation as that element is required by Oregon law on estoppel. I think that's all we ought to be deciding. And I just want to tell you that to my mind at least, that's what ought to be argued here today.

"* * * * *

"To frame the way [the] argument is now presented, and was presented to the Court of Appeals, your cross-appeal did not assign as error any instruction given to the jury."

COUNSEL FOR DEFENDANT: "Right."

JUSTICE: "The assumption here is that an appropriately instructed jury, a jury that was correctly told the law, found from the facts, from the evidence that that jury heard, that all of the elements of an estoppel were made out. And the only argument that's available to you is that there was no evidence from which a jury could have reached that conclusion with respect to the element of a false representation. We're not here to make new law with respect to what the elements of estoppel are, because there was never any claim by you that the jury was improperly instructed as to what the elements are."

COUNSEL FOR DEFENDANT: "Correct."

JUSTICE: "This is only, *only*, a case involving the adequacy of the evidence to meet the requirements of what a false statement is, as the jury was instructed as to what a false statement is.

"* * * * *

"[B]ut I do want to make sure that no impression is created that there is major law to be made with respect to the elements of estoppel or anything of that sort in this case. That's not what this fight's about."

COUNSEL FOR DEFENDANT: "No, sir. *This fight is about whether or not the plaintiff proved their case.*" (Emphasis added.)

Rather than decide the issue presented by this case, this court created issues by asking the parties to respond to written questions after argument.

This court stated in *ABCD...Vision v. Fireman's Fund Ins. Companies*, 304 Or 301, 307, 744 P2d 998 (1987), that "[e]stoppel cannot be invoked to expand insurance coverage or the scope of an insurance contract." *ABCD...Vision* and the cases it cited to support its proposition involved attempts to use estoppel to prevent an insurer from relying on policy exclusions based on the insurer's actions *after* the accident (loss) for which coverage was claimed. *ABCD...Vision* held that, in this context, estoppel is not available to expand what is covered under an insurance contract. It did not address whether estoppel could be applied to conduct by the insurer *before* the loss. Therefore, *ABCD...Vision* did not overrule, but rather is consistent with, *Paulson v. Western Life Insurance Co.*, 292 Or 38, 51-52, 636 P2d 935 (1981), in which this court distinguished between the insured's conduct before the loss and its conduct after the loss. Estoppel applies if the insured can show that he was prejudiced or changed his position in reliance on the insurer's conduct *before* the loss; with respect to the insurer's conduct after the loss, estoppel normally does not apply because the insured can show no reliance or change in position. *Id.* at 52.[2]

The majority, quoting *ABCD...Vision v. Fireman's Fund Ins. Companies, supra*, proceeds as if the statement that " '[e]stoppel cannot be invoked to expand insurance coverage or the scope of an insurance contract,' " 315 Or at 241, is the general rule of estoppel. *Id.* passim. The majority's analysis of this language is flawed in two respects. First, the only way that this statement can purport to be the rule of *ABCD...Vision* is if the context in which the statement was made is ignored. The court in *ABCD...Vision* was considering conduct by the insurance company and attempting to distinguish what conduct could cause estoppel and what could not. In particular, the court was attempting to distinguish between the situation in which, after a loss, an insurer

---

[2] This court went on to outline the elements of estoppel in the insurance context in concluding:

"There is evidence from which the trier of fact could find that (1) a false representation (albeit an innocent one) was made (2) by someone having knowledge of the facts to (3) one who was ignorant of the truth, (4) that the statement was made with the intention that it be acted upon by the plaintiff and (5) that plaintiff acted upon it. *Donahoe v. Eugene Planing Mill*, 252 Or 543, 545, 450 P2d 762 (1969)." *Paulson v. Western Life Insurance Co.*, 292 Or 38, 52, 636 P2d 935 (1981).

initially fails to invoke a policy exclusion relating to scope of coverage and the situation in which the insurer initially fails to invoke a policy exclusion relating to forfeiture of a claim by insured. In this context, the court said:

> "When an insurer's assertion of policy defenses is challenged by claiming that policy exclusions have been lost through estoppel, the correct procedure is to determine first whether the provisions upon which the insurer relies are conditions of forfeiture that are subject to estoppel or, instead, are matters relating to the scope of coverage. Estoppel cannot be invoked to expand insurance coverage or the scope of an insurance contract." *ABCD...Vision v. Fireman's Fund Ins. Companies, supra,* 304 Or at 307.

The statement makes sense in that context. The court did not purport to be stating a general rule applicable to all types of situations, and we should not suggest that it did.[3]

Second, the language in *ABCD ... Vision* quoted by the majority does not have the implication the majority suggests — it deals with *expanding* either existing coverage or the scope of a contract (which is the issue in estoppel cases involving conduct after the loss), but *not* with *creating the initial coverage or determining the scope of the contract itself* (which is the case in situations in which the insured can establish detriment, serving as a consideration substitute estopping the insurer from denying coverage).

*ABCD...Vision* dealt with the *insurer's conduct after a contract is formed.* The majority suggests that the pertinent distinction resulting from the one sentence in *ABCD ... Vision* seized on by the majority is one not suggested or implied by the case, *i.e.,* "between conduct before and after the *issuance of the policy.*" 315 Or at 242 (emphasis in original). The majority then attempts to support this distinction by citing

---

[3] "Taking the generally accepted definitions of the two doctrines, it is obvious that an insurance company should not be held incapable of the 'intentional relinquishment of a known right' or of 'inducing an ignorant party into a deleterious change of position' simply because a question of coverage is involved, and that courts making the blanket statement that waiver and estoppel are not available must have in mind the perhaps too liberal meaning accorded those terms when they are used to prevent the insurer from escaping an otherwise binding liability because of some minor technicality or oversight on the insured's part." Annot., 1 ALR 3d 1139, 1145 (1965) (footnotes omitted).

ORS 742.016(l), which deals with something entirely different than *ABCD...Vision* — the *insured's conduct at the time of entering into the contract.* The statute says that "oral representations by the insured" that are not a part of the application are not a part of the policy. The statute does not purport to state the effect of oral representations by the insurer.

In fact, the statute expressly states the practical effect of its rule in the last sentence: "Any oral representations *by the insured* that are not included in an application shall not be a part of the insurance policy *and the insurer shall be precluded from introducing such representation as evidence in any action based upon or involving the policy.*" ORS 742.016(1) (emphasis added). The statute does not address the effect of representations made by an insurer; the statute expressly excludes use of oral representations by one explicitly named party (the insured) when it easily could have applied the rule to both parties (insured and insurer) if that was its intent. Indeed, *Bunn v. Monarch Life Insurance*, 257 Or 409, 416, 478 P2d 363 (1971) (cited by the majority, 315 Or at 242 n 4), stated that "[t]he estoppel should run the other way [*i.e.*, against the insurer]," so the majority's parenthetical is correct that "*insured* was not bound by false representation inserted in the application by insurer's agent," 315 Or at 242 n 4 (emphasis added).

The majority also cites *Knappenberger v. Cascade Ins. Co.*, 259 Or 392, 487 P2d 80 (1971), as an example of a case in which "an insurer can be estopped to deny the existence of coverage notwithstanding the policy's terms and conditions." 315 Or at 242 & n 4. In *Knappenberger*, this court stated:

> "As with other contracts of adhesion, in the absence of special circumstances an insured is bound by the terms of an insurance policy purchased by him even though he is unaware of those terms because he has failed to read the policy, or having read the policy misunderstands it. * * *

> "* * * Where one is asked to sign an instrument which has no purpose other than to memorialize some kind of an agreement between the parties, he is bound by the instrument he signs *in the absence of evidence showing that he was misled or that there were other circumstances excusing him from scrutinizing the instrument.* It is no defense to show

that he did not read the instrument he signed." 259 Or at 398-99 (emphasis added).

Determining whether plaintiffs were "misled" or whether "there were other circumstances excusing [them] from scrutinizing the instrument" would, in the posture of this case, be a question of the sufficiency of the evidence, not a legal rule denying estoppel as a matter of law. Thus, by the majority's own admission and citation to *Knappenberger*, the statement that "estoppel cannot be invoked to expand insurance coverage or the scope of an insurance contract" is not a conclusive rule. The majority, then, should not suggest that the statement in *ABCD...Vision v. Fireman's Fund Ins. Companies, supra,* is a conclusive rule by purporting to decide this case as a matter of law without discussing why this case is not one of the situations to which the majority acknowledges that its rule does not apply.[4]

The majority takes several pages to try to distinguish language in *Paulson v. Western Life Insurance Co., supra.* 315 Or at 243-45. *Paulson* itself states that "[t]he issue [in *Schaeffer v. Mill Owners Ins. Co.,* 242 Or 150, 407 P2d 614 (1965), the main case cited by *ABCD...Vision v. Fireman's Fund Ins. Companies, supra,* for the ruled quoted by the majority that 'estoppel cannot be invoked to expand insurance coverage,' and *Wyoming Sawmills v. Transportation Ins. Co.,* 282 Or 401, 578 P2d 1253 (1978),] was whether an insurer's conduct after the loss could create coverage by

---

[4] The majority attempts to justify its refusal to discuss whether this case falls within one of the other circumstances outside the majority's rule by arguing that "[p]laintiffs do *not* argue that the exclusion is ambiguous or that the insurer dissuaded them from reading or understanding the exclusion," 315 Or at 246 n 7 (emphasis in original). The majority's rationale is unfortunate where, in this case, the majority is creating rules and distinctions not suggested by defendant. This case was presented to us as a question of the sufficiency of the evidence, and the majority has expanded the review to develop additional arguments for defendant and then refuses to consider additional arguments in response on behalf of plaintiffs because, the majority asserts, plaintiffs did not make them. Plaintiffs *did* argue the issue before us, that there was sufficient evidence to support the jury's verdict based on the jury instructions to which defendant did not object. Plaintiffs *did* argue that they relied on the agent's representation about what the policy said (*i.e.,* that they were misled and did not read the policy because they were dissuaded from reading the policy by the agent's confident representation). Plaintiffs could not be expected to do more and to anticipate the majority's expansion of the issue on behalf of defendant and to anticipate that specific words need be spoken to invoke the majority's consideration whether they were dissuaded from reading the policy. *See also supra,* note 1.

estoppel where there was no coverage under the agreement," *Paulson v. Western Life Insurance Co., supra*, 292 Or at 52. *Paulson* further states that "both cases stand for the proposition that if, *after loss has occurred*, an insurer erroneously denies coverage on the basis of an exclusion, such erroneous denial does not have the effect of creating coverage beyond the terms of the insuring clauses of the policy," *id.* at 51-52 (emphasis added). The *Paulson* court then showed the significance of the distinction in terms of prejudice or change of position, *id.* at 52, which is the proper distinction in estoppel.

In any event, in the majority's attempt to distinguish *Paulson*, the majority concludes: "However one reads *Paulson*, it is entirely consistent with a distinction between pre-*policy* and post-*policy* losses." 315 Or at 244 (emphasis in original).[5] Apparently the majority is drawing that distinction because, before the issuance of the policy, the employee had no opportunity to determine whether his expectations as to coverage had been met (he had only the representation of the insurer's agent, his employer, on which to rely), whereas after the issuance of the policy, the insured could read and try to understand the policy. It was true in *Paulson* that the employee did not have an issued policy in hand to look at and compare to the employer's representations, *but this was not the basis of the court's decision*. In fact, the insurer did issue a brochure outlining the employee's rights to obtain insurance. *Paulson v. Western Life Insurance Co., supra*, 292 Or at 40. This was a written brochure which the employee could have looked at to verify whether the agent's representations were accurate (which they were not).

If the court's holding were as narrow as the majority suggests — based on the notion that the employee got relief only because he had no way to determine whether the agent's representations were accurate — then the court would have had to deal with the brochure. The court did not deal with the brochure because the presence of a written brochure or of a written policy did not affect the holding of the opinion — that detriment is the key to whether a misrepresentation can

---

[5] The fact that the majority draws any distinction allowing estoppel in an insurance contract is inconsistent with the majority's prior claim that the rule is that "estoppel cannot be invoked to expand insurance coverage or the scope of an insurance contract."

create coverage, even with the existence of a written brochure or policy. The majority suggests that *Paulson* is consistent with the pre-policy/post-policy distinction because of the majority's implicit suggestion that in *Paulson* the insured had nothing in writing on which to rely. That simply is not the case.

The proper key to estoppel is reasonable reliance causing detriment. If the insured relied to his detriment on a misrepresentation of the insurer in purchasing insurance, and that reliance was reasonable, the insurer is estopped under our precedents to deny that the coverage exists. The jury was properly instructed to that effect in this case.[6]

This case does not involve an attempt to expand the scope of the contract based on the insurer's actions after a loss. Rather, it involves determining the effect of the terms of the contract itself when the insurer's agent allegedly misrepresented the scope of the policy's coverage. In this context, estoppel is available in the limited situations in which its elements are proven. Here, the jury was instructed that, in order to find for plaintiffs, it had to find that plaintiffs had established by a preponderance of the evidence: (1) Keesecker falsely represented that he would provide to plaintiffs "full liability coverage for the grocery store"; (2) plaintiffs were not aware of the falsity of the representation; (3) Keesecker made the representation with the intention that plaintiffs would rely on it; (4) plaintiffs acted in reliance on the representation; and (5) it was reasonable for plaintiffs to rely on the representation.[7]

---

[6] Reasonable reliance and detriment are more likely to occur pre-loss, but estoppel could occur post-loss, as when the agent tells the insured that he has 60 days to file a claim when he only has 45 days in which to do so. In that case, if the insured reasonably relied on the representation to his detriment by waiting 55 days to file the claim, the insurer is estopped from asserting the 45-day limit.

[7] In its cross-appeal, defendant did not assign error to the jury instructions; therefore, we should not address whether the instructions given by the trial court correctly stated the elements of estoppel.

Nevertheless, these jury instructions are nearly identical to this court's recent statement of the elements of estoppel in *Welch v. Washington County*, 314 Or 707, 715-16, 842 P2d 793 (1992):

"The elements of equitable estoppel are:

" '[T]here must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other

The Court of Appeals' opinion addressed only the question of a false representation by defendant, holding, in essence, that, as a matter of law, there was not sufficient evidence that defendant made a false representation to plaintiffs. *DeJonge v. Mutual of Enumclaw*, 104 Or App 296, 300, 800 P2d 313 (1990). It is that holding that plaintiffs ask this court to review. We should hold that there was evidence in the record from which the jury could have found a false representation by defendant, as that element was defined by the jury instructions, to which no objection was made.

Shortly after buying their small grocery store, plaintiffs met with Keesecker, defendant's agent, to obtain insurance for the store. Because plaintiffs had no experience operating a grocery store, they relied on Keesecker's expertise regarding appropriate coverage, telling him that they wanted "full" or "complete" coverage. The jury could have found that plaintiffs meant, and Keesecker understood this to mean, that plaintiffs wanted coverage that was broad enough to cover liability that reasonably could be expected to arise out of sales of the kind of goods sold in plaintiffs' store. Because alcoholic beverages were sold there, and Keesecker knew that, the jury further could have found that Keesecker understood that plaintiffs expected him to procure for them insurance that would include coverage for liability of that kind. Keesecker told them that he "was there to serve their purposes." The jury could have found from this statement that Keesecker, by that statement, created and intended to create the impression in the minds of plaintiffs that any insurance policy Keesecker brought back to and recommended to them would meet the needs plaintiffs had identified.

When Keesecker brought the policy in question to plaintiffs, therefore, Keesecker could have been found by the jury to be representing to plaintiffs that the policy included the coverage plaintiffs needed, including coverage for liability arising out of the sale of alcoholic beverages to minors. Because the policy did not, in fact, include such coverage, the

---

party; (5) the other party must have been induced to act upon it[.]' *Coos County v. State of Oregon*, 303 Or 173, 180-81, 734 P2d 1348 (1987), quoting *Oregon v. Portland Gen. Elec. Co.*, 52 Or 502, 528, 95 P 722 (1908)."

These elements are nearly identical to the elements of estoppel listed in *Paulson v. Western Life Insurance Co.*, *supra*, note 2.

jury was entitled to find that Keesecker (and, through Keesecker, defendant) represented to plaintiffs that the policy provided a coverage that the policy did not provide. This was sufficient evidence of a false representation to permit the jury to find as it did. We are not free, therefore, to disturb the jury's verdict. Or Const, Art I, § 17 ("In all civil cases the right of Trial by Jury shall remain inviolate"); Or Const, Art VII (Amended), § 3 (quoted *supra*).

The majority, however, announces a rule of estoppel and disturbs the jury's finding without examining the facts. The rule ultimately announced by the majority is that estoppel can negate an express exclusion in a written insurance policy where the exclusion is ambiguous, where the insurer dissuaded the insured from reading or understanding the exclusion, or perhaps in other situations. 315 Or at 245-46.[8] Even if that is the proper rule, however, the majority never analyzes the evidence to show why it is insufficient to establish that the insurer dissuaded the insured from reading the policy. The majority simply states what the evidence would need to show to establish estoppel, and then summarily concludes that estoppel is not available. Why cannot an insurer's misrepresentation, that a policy covers something that it does not, be adequate to dissuade an insured from reading the policy? For example, why is not the insured entitled to reason that, because he asked for earthquake insurance, and the expert agent sold him a policy he said had earthquake insurance, he does not need to labor over the policy to see if it has earthquake protection?

If the majority justifies interfering with the jury's findings because, in the majority's opinion, the judge instructed the jury with the wrong definition of estoppel, at a minimum the case would have to be remanded for a retrial using the appropriate legal standard. If the majority says both that the legal standard was wrong and that the evidence was not adequate to meet the new standard, the majority is not

---

[8] It is unclear where the majority borrows the language about ambiguous policies and insurers dissuading insureds; while this language is part of the rule stated by the majority, the source of the language is not identified in the majority opinion. The factors considered by this court in *Knappenberger v. Cascade Ins. Co.*, 259 Or 392, 399, 487 P2d 80 (1971), discussed *supra* and cited by the majority, 315 Or at 242 n 4, were "evidence showing that [the insured] was misled or that there were other circumstances excusing [the insured] from scrutinizing the instrument."

only saying that the evidence introduced was insufficient, but that, knowing now what new legal standard they should use, the plaintiffs would not be able to introduce additional evidence which may be relevant to the new standard but not to the old one. This is not the role of an appellate court. Anything short of a remand is a decision on sufficiency of the evidence which was or could be produced. If the majority believes that the evidence was insufficient, it should explain why that is so.

The proper inquiry in estoppel focuses on reasonable reliance and on detriment. The majority's rule, at least as it is applied here without any consideration of the facts which could show that the insured was dissuaded from reading the policy, is bad precedent. Take three situations: (1) You call the insurer's agent from a car rental counter and ask whether your insurance covers you while driving a rental car; he says "absolutely yes, it does"; (2) You write to the insurer's agent and say that you cannot understand exception number 4, but you want to make sure you are covered for hail damage; he says "absolutely yes, you are"; (3) You purchase insurance after telling the insurer's agent that the only reason you are purchasing this insurance is because it has tornado coverage; he says "absolutely yes, this policy has tornado coverage." It turns out that the agent was wrong in each situation. Under a proper analysis of our precedents, the insurer is estopped to deny the coverage if you can prove that the discussions took place, that your reliance was reasonable and that your reliance on the representation created detriment. Under the majority's analysis, the insurer apparently cannot be estopped under these circumstances.

The harshness of the majority's rule would be lessened if it were based on an assumption that, while a contract claim of estoppel does not exist when an insurance agent incorrectly tells an insured that something is covered when it is not, causing the insured to reasonably rely on the statement to his detriment, a tort claim would be available.[9] Indeed, the majority bases its analysis here on contract principles, and this court has recently acknowledged that

---

[9] *See* 315 Or at 240 n 2 & 246 n 8 (pointing out that tort claims are not addressed by the majority opinion).

contract and tort rules are not interchangeable. *Martini v. Beaverton Ins. Agency, Inc.*, 314 Or 200, 838 P2d 1061 (1992).

However, this court has today applied contract principles in a tort context in a way that jeopardizes the possibility that the facts of this case or the hypothetical situations posed *supra* may be actionable in tort. In *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 160-63, 843 P2d 890 (1992), this court today applied contract rules in limiting the scope of the tort of negligent misrepresentation. *See id.* at 180-81 (Unis, J., dissenting, pointing out impropriety of doing so).

Some of the hypothetical situations I posed *supra* could involve an insurer's agent's failure to understand the insurance policies he is selling and interpreting to insureds. For example, if an agent is negligent in failing to understand the policies he is selling and tells an insured calling from a rental car counter that his rental car is covered under an existing policy, when it is actually excluded from coverage, both a contract action and a tort action should be available. Where, as in this case, an insured reasonably relies on the agent's statements and acts to his detriment based on those statements, a claim under the contract in which the insurance company is estopped to deny coverage should be available. Where the agent's misrepresentations are based on the agent's negligence in understanding and interpreting the insurance contract to the insured, and where the agent knows or intends the information for the insured's benefit and the insured justifiably relies on the representation, causing economic loss, a tort action for negligent misrepresentation should be available. The majority concludes that plaintiffs' contract action is not available in this case, and I fear that the majority's analysis in *Onita Pacific Corp. v. Trustees of Bronson, supra*, may unwittingly make the tort action unavailable under similar circumstances.

In *Onita Pacific Corp. v. Trustees of Bronson, supra*, 315 Or at 165, the majority of this court held that the tort of negligent misrepresentation is actionable in Oregon, but not when information is offered gratuitously. In my first and second hypotheticals, no consideration is paid for the agent's representation that the insurance policy covers the insured's rental car or hail damage; in this case and in my third

hypothetical, the representation occurred during negotiations, just as it did in *Onita Pacific Corp*.

In *Onita Pacific Corp.*, 315 Or at 161-62, the majority of this court held that the tort of negligent misrepresentation is not actionable when parties are negotiating at arms length. Because the majority did not define the term "arms length," however, *see id.* at 188-89 (Unis, J., dissenting, urging majority to define term "arms length"), we do not know whether providing information to the insured at the rental car counter is an arms-length transaction; nor do we know whether this case or my third hypothetical involving the purchase of an insurance policy is an arms-length transaction.

Further, in *Onita Pacific Corp.*, the majority concluded improperly, in my view, *see id.* at 182-85 (Unis, J., dissenting, arguing that proper distinction is between remote and direct harm rather than between economic and other harm), that, when purely economic damages are involved, a special duty must be invoked to impose liability. *Onita Pacific Corp.*, 315 Or at 159. It remains to be seen whether an agent/insured relationship satisfies the majority's test for the recovery of the economic damage of failing to be compensated for loss represented to be covered under an insurance policy.

Today the majority excludes from the scope of contract claims involving estoppel significant cases which our precedents suggest should be included. Unless the majority backtracks from its analysis in *Onita Pacific Corp.*, those claims excluded from the scope of estoppel in contract may also be excluded from the scope of the tort of negligent misrepresentation. I believe that each decision is wrong, but taken together they strike a double blow to persons who reasonably and justifiably rely to their detriment on information supplied by others.

The analysis in contract should focus on detriment, which makes reasonable reliance the issue, and the analysis in tort should focus on justifiable reliance, *Onita Pacific Corp. v. Trustees of Bronson, supra*, 315 Or at 188-89 (Unis, J., dissenting). If a party (insurance agent or otherwise) negligently misrepresents the contents of a contract (insurance policy or otherwise) and a person enters into the contract in

reliance on that misrepresentation and suffers loss as a result, the estoppel analysis should focus on whether the reliance was reasonable, and the negligent misrepresentation analysis should focus on whether the reliance was justified. The jury should be allowed to answer those questions absent a reasoned determination of when reliance is not reasonable[10] or justified[11] as a matter of law.

In this case, the jury performed its function, and its conclusion should be allowed to stand.

I respectfully dissent.

Van Hoomissen and Fadeley, JJ., join in this opinion.

---

[10] This would necessarily include a discussion of integration clauses, adhesion contracts, and other contract principles.

[11] This would necessarily include a discussion of comparative negligence and other tort principles.